[Civ. No. 20011.   First Dist., Div. Two.   Aug. 20, 1962.]

JAMES P. McLOUGHLIN, as Secretary-Treasurer of Retail Clerks Union, Local 428, AFL-CIO, Plaintiff and Respondent, v. L. BLOOM SONS COMPANY, INC., et al., Defendants and Appellants.

*Assigned by Chairman of Judicial Council.

Rea, Frasse, Anastasi, Clark & Chapman, Anthony J. Anastasi, Pembroke Gochnauer, Robert M. Adams, Jr., and Angell, Adams, Gochnauer, Elder & Holmes for Defendants and Appellants.

Benjamin Dreyfus and Garry, Dreyfus & McTernan for Plaintiff and Respondent.

AGEE, J.—Defendants appeal from the judgment in this action for declaratory relief, brought on behalf of the union above named against defendant L. Bloom Sons Co., Inc., a corporation, hereinafter referred to as "Bloom," and defendant Bloom's Valley Fair, Inc., a corporation,[1] hereinafter referred to as "Bloom's Valley Fair." The judgment holds that, for the purposes of a collective bargaining agreement, executed between the union and Bloom, the separate corporate entity of Bloom's Valley Fair is to be disregarded on the ground that it is the *alter ego* of Bloom and as such is bound by the agreement in the same manner as though it were expressly included as a signatory thereto.

Bloom operated three shoe stores in San Jose, all under the name of "Bloom's." On June 25, 1957, it joined with the union in a collective bargaining agreement in which Bloom recognized the union as the sole bargaining agent for all of its employees coming under the jurisdiction of the union. On March 20, 1958, Bloom's Valley Fair opened a new shoe store at the Valley Fair Shopping Center in San Jose. This store was also named "Bloom's." It is conceded to be within the jurisdictional area of the union, which is Santa Clara County and Menlo Park. The union's demand that it be recognized under the agreement as the bargaining agent for the employees of the new store was rejected on the ground that these persons were employees of Bloom's Valley Fair and it was not a party to the agreement.

Defendants do not challenge the sufficiency of the evidence to support the following findings: The two corporations were under the common control, and under substantially common ownership, of Maxwell H. Bloom and the members of his immediate family. He was the chief executive officer of both corporations. This family group owned all of the outstanding stock of Bloom, which in turn owned one-half of the outstanding stock of Bloom's Valley Fair, the other half of which was owned by members of the family group individually. The directors of the two corporations were the same with the exception of one directorship; the general manager of Bloom, who was a director of both corporations, was the president of Bloom's Valley Fair. Books and records of both corporations were kept and maintained by the same personnel in the same office, which was the principal office of both corpora-

---

[1]The former corporate name was "Blooms Salinas, Inc."; it was changed in 1958, when its store in Salinas was sold and the new store was opened in San Jose.

tions; the said records included customer ledger sheets and reflected purchases by customers from both corporations. Bloom did substantially all the work in obtaining the lease and financing for the Valley Fair store. The management and fiscal administration of Bloom's Valley Fair were controlled by Bloom by way of purported agreements between the two corporations; charge accounts usable at any of the four stores were centrally administered by Bloom, which also placed advertising for Bloom's Valley Fair and performed its bookkeeping and accounting functions. The manager of the Valley Fair store, who was the former manager of Bloom's stores, performed his duties under the direction of the president of Bloom's Valley Fair, who was also the general manager of Bloom. The Valley Fair store was advertised to the public as the fourth store of the Bloom enterprises. Substantially all purchases of shoes available for sale in the several stores were the subject of pool or unit buying, generally conducted by Bloom. Maxwell H. Bloom directed substantially all of the advertising conducted by the four stores. Bloom's Valley Fair was controlled and operated in the interests of Bloom by that corporation and by Maxwell H. Bloom. The court made a general finding that the defendant corporations had substantial unity of ownership and interest, and that there was such management and control of Bloom's Valley Fair by Bloom that the former was the conduit, instrumentality and *alter ego* of Bloom for purposes of the collective bargaining agreement. In our opinion, the trial court was justified in making such finding.

Usually, a disregard of the corporate entity is sought in order to fasten liability upon individual stockholders. That was the situation in *Automotriz etc. De California* v. *Resnick*, 47 Cal.2d 792, 796 [306 P.2d 1, 63 A.L.R.2d 1042], where it is said: ''It has been stated that the two requirements for application of this doctrine are (1) that there be such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist and (2) that, if the acts are treated as those of the corporation alone, an inequitable result will follow.''

However, only a difference in wording is used in stating the same concept where the entity sought to be held liable is another corporation instead of an individual. ''A very numerous and growing class of cases wherein the corporate entity is disregarded is that wherein it is so organized and controlled, and its affairs are so conducted, as to make it

merely an instrumentality, agency, conduit, or adjunct of another corporation." (1 Fletcher, Cyc. Corporations, pp. 154, 155; *cf.* Ballantine on Corporations (1946) § 136, pp. 311-313; *Thomson* v. *L. C. Roney & Co.* (1952) 112 Cal.App.2d 420, 429 [246 P.2d 1017].)

It should be noted that the lower court's decision is directed only to the collective bargaining agreement and does not purport to disregard the separate entity of Bloom's Valley Fair in any other respect. As stated in *Kohn* v. *Kohn,* 95 Cal.App.2d 708, 719 [214 P.2d 71] : "In the instant case there may well have been various business reasons sufficient to justify and support the formation or continuation of the corporation on the part of defendant. For such purposes the Federated Investment Company still stands."

Defendants rely mainly upon *Hollywood Cleaning & P. Co.* v. *Hollywood L. Service, Inc.,* 217 Cal. 124 [17 P.2d 709], to support their contention that the court in the instant case should not have disregarded the separate entity of Bloom's Valley Fair. The appeal in the cited case was taken on the judgment roll alone, and the appellate court was confined in its review of the facts to the findings of the trial court. The defendant corporation had made an agreement with plaintiff to turn over to it all of the dry cleaning, dyeing and pressing business acquired in the course of the defendant's laundry business. The agreement covered any other laundries acquired by defendant during the term of the agreement. Frank L. Meline, Inc., a corporation, acquired several laundry businesses during such term. All of this corporation's stock was owned by Frank L. Meline, as an individual. In turn, he and Frank L. Meline, Inc., owned all of the stock of defendant corporation. Plaintiff therein contended that, under such circumstances, Frank L. Meline, Inc., was bound by the agreement *as a matter of law.* The trial court refused to disregard the separate corporate entity of Frank L. Meline, Inc. and held that it was not bound by the agreement between plaintiff and defendant. The precise holding is as follows : "In other words, plaintiff's contention narrows down to the contention that the separate corporate entities of the two corporations should be disregarded solely because all of the stock of defendant corporation is owned by another corporation, Frank L. Meline, Inc., or by Frank L. Meline, and that the last-named party owns all the stock of Frank L. Meline, Inc. This has never been the rule in this state. Whatever may be the rule in other jurisdictions, the rule is well settled in this state

that the mere fact one or two individuals or corporations own all of the stock of another corporation is not of itself sufficient to cause the courts to disregard the corporate entity of the last corporation and to treat it as the *alter ego* of the individual or corporation that owns its stock."

All that *Hollywood* holds is that sole ownership by one individual of all of the stock in two corporations does not require the court, as a matter of law, to find that one of the corporations is the *alter ego* of the other. This is not in conflict with the holding of the trial court in the instant case. ■ The *alter ego* doctrine is founded in equity and its application is not made to depend upon prior decisions involving factual situations which appear to be similar. As stated in *Automotriz, supra,* p. 796: "It is the general rule that the conditions under which a corporate entity may be disregarded vary according to the circumstances of each case." Also, in *Stark* v. *Coker,* 20 Cal.2d 839, 846 [129 P.2d 390], it is said: "The conditions under which the corporate entity may be disregarded, or the corporation be regarded as the *alter ego* of the stockholders, necessarily vary according to the circumstances in each case inasmuch as the doctrine is essentially an equitable one and for that reason is particularly within the province of the trial court. Only general rules may be laid down for guidance."

■ With respect to the second requirement stated in *Automotriz, supra,* i.e., "that, if the acts are treated as those of the corporation alone, an inequitable result will follow," the trial court found that a failure to disregard the corporate entity of Bloom's Valley Fair would result in an injustice and unfairness, in that such failure would permit Bloom to use Valley Fair as an instrumentality to avoid recognition of the union as the bargaining agency for the Valley Fair employees and thus avoid complying with all of the other provisions of the collective bargaining agreement inuring to the benefit of those employees; that if Bloom had opened and operated the Valley Fair store directly, it would have been bound by such provisions; that avoidance of these contractual obligations would be unfair and unjust to the union, its members, the Valley Fair employees, and the public; that the contractual obligations of the collective bargaining agreement, which include provisions pertaining to working conditions, a pension plan and a welfare plan, are valid objectives of organized labor and in accord with the public policy of this state.

These findings are supported by the record and there is no showing of any abuse of discretion by the trial court in applying the *alter ego* doctrine to the situation presented herein. So far as there are any legitimate objectives to be gained by having two separate corporate entities, these remain undisturbed. All that the judgment requires is that the *alter ego* corporation be considered as being a party to the bargaining agreement executed by the dominant corporation less than nine months before the opening of the new store.

A large segment of the public favors the unionization of employees. Many will not knowingly trade at a store where the employer does not have an agreement with a union, in this case the "Retail Clerks Union," to act as the bargaining agent for the employees. At three of the stores in San Jose which were being operated under the name of "Bloom's," a collective bargaining agreement with the union had been made. At the fourth store, although operated under the same name, the agreement was not recognized by the employer. Yet public announcements were mailed to existing customers of the three older stores, reciting that "Bloom's" had been in business in San Jose since the year 1867 and that: "Now, a fourth Bloom's has been completed, in the sparkling, new Valley Fair Shopping Center." The public was invited to "Open a Bloom's Charge Account which you may use at all four Bloom's Stores in San Jose." Apparently, it was the desire of Bloom's to create in the mind of the public the impression that all four stores were under the same management and control. The trial court expressly found that a "[f]ailure to disregard the separate corporate entity of defendant Blooms Valley Fair would further result in confusion to the public." The judgment herein is consistent with Bloom's implied representations to the public that all four stores are under the same management and control and it correctly seeks to avoid the "inequitable result" which would follow holding to the contrary.

The jurisdictional issue raised by Bloom's Valley Fair has been directly answered by the United States Supreme Court in *Charles Dowd Box Co.* v. *Courtney,* 368 U.S. 502 [82 S.Ct. 519, 7 L.Ed.2d 483] decided February 19, 1962. The opinion quotes from section 301 (a) of the Labor Management Relations Act of 1947, as follows: "Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, . . . may be brought in any district

court of the United States having jurisdiction of the parties, . . ." The court then states: "The sole question presented by this case is whether this federal statute operates to divest a state court of jurisdiction over a suit for violation of a contract between an employer and a labor organization." The union in that case had filed an action against the employer in a Massachusetts state court, asking for a judgment declaring that there existed a valid and binding collective bargaining agreement between it and the employer. The employer interposed the defense that the state court had no jurisdiction over the controversy. The Supreme Judicial Court of Massachusetts held that section 301 (a) had not made the federal courts the exclusive arbiters of suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce. The United States Supreme Court affirmed, stating: "We agree with the Supreme Judicial Court of Massachusetts that the courts of that Commonwealth had jurisdiction in this case, and we accordingly affirm the judgment before us. . . . The statute does not state nor even suggest that such jurisdiction shall be exclusive. It provides that suits of the kind described 'may' be brought in the federal district courts, not that they must be. . . . The legislative history of the enactment nowhere suggests that, contrary to the clear import of the statutory language, Congress intended in enacting § 301 (a) to deprive a party to a collective bargaining contract of the right to seek redress for its violation in an appropriate state tribunal. . . . Concurrent jurisdiction has been a common phenomenon in our judicial history, and exclusive federal court jurisdiction over cases arising under federal law has been the exception rather than the rule."

The same issue was just as directly answered by the California Supreme Court in *Grunwald-Marx, Inc.* v. *Los Angeles Joint Board* (1959) 52 Cal.2d 568 [343 P.2d 23]. That action was brought by the employer and charged a breach of a collective bargaining agreement by the union. The remedy sought was for an order requiring an arbitration of the dispute as provided in the agreement. The court said: "Stated another way, the question is whether a state court has jurisdiction over a breach of a collective bargaining agreement, which breach may involve somewhat indirectly an unfair labor practice. We are of the opinion that, under the facts here involved, the state court had jurisdiction." (Pp. 579-580.)

These two decisions are directly in point. The action herein

is essentially of the same type. It merely seeks a judicial determination that Bloom's Valley Fair, as the *alter ego* of Bloom, is bound by the collective bargaining agreement to the same extent as the dominant corporation.

Bloom's Valley Fair complains that findings were not made on the jurisdictional issue nor on the issue, hereafter discussed, that its employees were indispensable parties to this action. These are questions of law, as to which no findings are required. (*Wadler* v. *Justice Court,* 144 Cal.App.2d 739, 744 [301 P.2d 907] ; *Jenner* v. *City Council of City of Covina,* 164 Cal.App.2d 490, 501 [331 P.2d 176].) Moreover, even if treated as questions of fact, there is no evidence in the record which would support findings favorable to said defendant. (*Jenner* v. *City Council of City of Covina, supra*; *Maloof* v. *Maloof,* 175 Cal. 571, 573 [166 P. 330].)

Bloom's Valley Fair next contends that its employees were indispensable parties to the action. We do not agree. The action is, in essence, one to determine the identity of the parties to the agreement of June 25, 1957. The judgment merely holds that Bloom's Valley Fair *is, in legal effect, a party* to such agreement. These employees are, of course, now faced with the problem of whether to become members of the union in order to remain employed. This is the same situation which was faced by the employees of the other three stores on June 25, 1957, when their employer signed the agreement.

However, in this action, a complete determination of the controversy as to the identity of the contracting parties could be had without the presence of the employees, and the lower court properly held that they were not indispensable parties to such action.

*Judgment affirmed.*

Kaufman, P. J., and Shoemaker, J., concurred.