**Alexia WADY, Plaintiff,**

v.

**PROVIDENT LIFE AND ACCIDENT INSURANCE COMPANY OF AMERICA; Unumprovident Corporation, Defendants.**

**No. 01CV10818MMM(PJWx).**

United States District Court,
C.D. California.

April 30, 2002.

**1062**

Daniel S. Gruber, Glenn R. Kantor, Gruber & Kantor, Encino, CA, for plaintiff.

Stephen H. Galton, Robert F. Keehn, Ann C. Schneider, Galton & Helm, Los Angels, CA, for defendants.

## ORDER GRANTING DEFENDANT UNUMPROVIDENT'S MOTION FOR SUMMARY JUDGEMENT

MORROW, District Judge.

This case concerns plaintiff Alexia Wady's claim for disability benefits under a policy issued by defendant Provident Life and Accident Insurance Company of America ("Provident"). After her claim for total disability benefits was denied, Wady filed this action alleging claims for breach of contract and breach of the covenant of good faith and fair dealing against both Provident, the entity that actually issued the policy, and UnumProvident Corporation, Provident's parent company.

UnumProvident has now moved for summary judgment, asserting that it can-not be liable for breach of contract because it was not a party to the insurance contract between Wady and Provident, or breach of the covenant of good faith and fair dealing, because that cause of action arises only when there is a contractual relationship between the parties. Wady opposes the motion, asserting that UnumProvident was extensively involved in the denial of her claim, and that Provident and UnumProvident are alter egos of one another. Because the court finds that there is no material issue of fact as to whether there was a contractual relationship between Wady and UnumProvident, or as to whether UnumProvident is liable on an alter ego theory, the court grants UnumProvident's motion.

## I. FACTUAL BACKGROUND

In or about 2000, plaintiff Alexia Wady allegedly became totally disabled as a result of work-related injuries.[1] At the time, she was insured under a Provident Life and Accident Insurance Company disability insurance policy, which was to provide monthly disability benefits in the event she became disabled.[2] Wady submitted a claim for benefits that Provident initially paid in accordance with the policy. In November 2001, however, she alleges that Provident determined that she was not totally disabled, denied her claim, and discontinued benefits.[3] Wady contends that this denial constitutes a breach of her insurance contract with Provident, and that as a direct result of the breach, she has suffered contractual damages in excess of $1,500 per month.[4] She further alleges that the denial constitutes a breach of the duty of good faith and fair dealing owed by Provident, and that as a result of this breach, she has suffered mental and emo-

---

**1.** Complaint, ¶ 7.

**2.** *Id.,* ¶ 5.

**3.** *Id.,* ¶ 8.

**4.** *Id.,* ¶ 9.

tional distress.[5] Because she believes Provident's conduct was intentional, or that it was carried on in willful and conscious disregard of her rights, Wady seeks punitive damages pursuant to California Civil Code § 3294.[6] She also seeks attorneys' fees.[7]

The following facts are undisputed with respect to UnumProvident's motion for summary judgment: Provident is an "operating insurance company" that issued the disability insurance policy that is the subject of the present dispute.[8] UnumProvident is a holding company and the parent of Provident.[9] UnumProvident itself does not directly issue insurance prod-ucts or policies, and is not licensed to do so.[10] UnumProvident has never assumed liability for any policies issued by Provident or for any claims under Provident policies.[11]

▇▇▇ The forms that Wady submitted in connection with the disputed claim bear the "Unum" logo, and direct the claimant to return information to an "Unum" address.[12] Correspondence to Wady, including the acknowledgment of her claim, was sent on UnumProvident letterhead. Each of the letters was signed, however, "Provident Life and Accident Insurance Company." [13] During the claims process, Wady

5. *Id.*, ¶¶ 11–12, 14.

6. *Id.*, ¶ 16.

7. *Id.*, ¶ 15.

8. Defendant's Statement of Uncontroverted Facts and Conclusions of Law ("Def's Facts"), ¶¶ 2,3; Plaintiff's Statement of Genuine Issues ("Pl.'s Issues"), ¶¶ 2–3. Plaintiff disputes Defendant's Fact No. 3 to the extent it "implies that UnumProvident is not liable to plaintiff." (Pl.'s Issues, ¶ 3.) Because the fact offered by defendant does not concern liability to plaintiff, the court finds that it is uncontroverted for purposes of this motion.

9. Def.'s Facts, ¶ 2; Pl.'s Issues, ¶ 2.

10. Def.'s Facts, ¶ 1. Plaintiff disputes this statement, asserting that UnumProvident "does issue insurance products and considers itself to have insured plaintiff in this action." (Pl.'s Issues, ¶ 1.) The court has reviewed the exhibits referenced in support of this statement, and found nothing to indicate that UnumProvident, as opposed to Provident, has issued any insurance policy or product, including the policy that insured plaintiff. (See Pl.'s Exhibits 1–27). The court therefore finds that this fact is uncontroverted for purposes of this motion.

11. Def.'s Facts, ¶ 4. Plaintiff disputes this fact, again citing all of the exhibits it has submitted in support of its opposition to this motion. (Pl.'s Issues, ¶ 4.) The court has reviewed the exhibits referenced, and found nothing to indicate that UnumProvident has ever assumed liability for any Provident policy or claim. (Pl.'s Exhibits 1–27). The court therefore finds that this fact is uncontroverted for purposes of this motion.

12. Pl.'s Issues, ¶ 5; Pl.'s Exs. 1, 2. Citing Rule 1002 of the Federal Rules of Evidence, defendant has objected to the characterization of these and other exhibits set forth in paragraph 3 the Declaration of Timothy A. Gravitt ("Gravitt Decl.") on the grounds that the exhibits speak for themselves. To the extent that paragraph 3 of Gravitt's declaration indicates that the documents came from defendant's claims file, and thus provides a basis for authenticating the exhibits, the objection is overruled. To the extent it seeks to prove the content of the documents, it is sustained, as the documents themselves (or acceptable copies) are available for that purpose. Fed. R.Evid. 1002, 1003. Defendant does not dispute this fact but notes that, although the logo is Unum's, the forms authorize release of information to an "the appropriate 'UnumProvident Corporation subsidiar[y] or other authorized representative.' " (Defendant's Objections to Evidence Submitted In Opposition to Motion ("Def.'s Obj.") at 4:1–3).

13. Pl.'s Issues, ¶¶ 6–7; Pl.'s Exs. 3, 4, 14, 16 and 17. Defendant has not disputed this fact. It notes, however, that although the letterhead is that of UnumProvident, the correspondence is signed by various representatives of Provident.

was interviewed by an individual who advised her that he represented UnumProvident.[14] An internal review of Wady's medical records was requested via an "Unum" memorandum.[15] Other records requests similarly came from UnumProvident.[16]

In connection with her medical examination, Wady received a letter on UnumProvident letterhead, stating that "UnumProvident wishes to exercise its contractual right to have you examined." [17] UnumProvident also wrote the doctor that conducted the examination two letters in which it identified Wady as "our insured." One of the letters stated that the evaluation was needed so that "UnumProvident [could] fully evaluate" Wady's claim.[18] The letter denying Wady's claim was sent on Unum-Provident letterhead, and referenced the procedure for challenging the denial through UnumProvident.[19] Wady has proffered evidence that UnumProvident has borrowed hundreds of millions of dollars from Provident.[20]

■ Defendant has objected to six of plaintiff's exhibits on the basis that they are unauthenticated.[21] Timothy Gravitt purports to authenticate these documents on the basis that he obtained them from UnumProvident's website on April 9, 2002. Defendants have objected on the grounds that Gravitt has no personal knowledge of who maintains the website, who authored the documents, or the accuracy of their contents.[22] Rule 901(a) of the Federal Rules of Evidence states that documents are sufficiently authenticated by evidence that will support a finding that they are what their proponent claims them to be. The court agrees that Gravitt cannot authenticate these documents as statements of UnumProvident. See, e.g., *United States v. Jackson*, 208 F.3d 633, 638 (7th Cir.2000) (finding that evidence taken from the Internet lacked authentication where the proponent was unable to show that the information had been posted by the organizations to which she attributed it); *St. Clair v. Johnny's Oyster & Shrimp, Inc.*,

---

**14.** Pl.'s Issues, ¶ 8. Defendant does not dispute this fact, but objects to one of the supporting documents, plaintiff's Exhibit 6, as "hearsay as to the statements of Chuck Redfern." Insofar as plaintiff offers the document to prove the truth of Redfern's purported statement, the objection is sustained. Defendant also notes that Exhibit 7, also offered in support of this fact, was copied to "Janet Fox/Provident Life." (Def.'s Obj. at 4:12–17).

**15.** Pl's Issues, ¶ 9. Defendant has not disputed this fact but notes that neither document offered in support refers to "UnumProvident." (Def's Obj. at 4:19).

**16.** Pl.'s Issues, ¶ 10. Defendant has not disputed this fact, but notes that one of the supporting documents, Exhibit 5, and part of Exhibit 9, were authored by Janet Fox of Provident Life. Defendant further notes that the balance of Exhibit 9 was authored by Marian Pearman of Provident Life. (Def's Obj. at 4:8–10, 21–25).

**17.** Pl.'s Issues, ¶ 11. Defendant does not dispute this fact, but notes that the letter is

signed by Janet Fox of Provident Life. (Def's Obj. at 5:1–3).

**18.** Pl.'s Issues, ¶¶ 12, 14. Defendant does not dispute this fact, but notes that Exhibit 15, one of the supporting documents, was signed by Janet Fox of Provident Life. (Def's Obj. at 5:1–3).

**19.** Pl.'s Issues, ¶ 13. Defendant has not disputed this fact but notes that the letter is signed by Janet Fox of Provident Life.

**20.** Pl.'s Issues, ¶ 20. Defendant objects to Exhibits 27 and 28 as irrelevant because they concern a different entity, Unum Life Insurance Company of America. Because Exhibit 27, the annual report, discusses financial transactions with UnumProvident as well, the objection is overruled. FED.R.EVID 401, 402.

**21.** Def's Obj. at 2:13–21; Pl.'s Exs. 18–21, 23, 25.

**22.** Def's Obj. at 2:13–21.

76 F.Supp.2d 773, 775 (S.D.Tex.1999) ("Anyone can put anything on the Internet. No web-site is monitored for accuracy and nothing contained therein is under oath or even subject to independent verification absent underlying documentation. Moreover, the Court holds no illusions that hackers can adulterate the content on any web-site from any location at any time. For these reasons, any evidence procured off the Internet is adequate for almost nothing..."). The court sustains defendant's objections to Exhibits 22, 24 and 26, and will not consider plaintiff's Genuine Issues 15–19 in ruling on this motion.

## II. DISCUSSION

### A. Standard Governing Motions For Summary Judgment

A motion for summary judgment must be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED.R.CIV.PROC. 56(c). A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact. See *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Where the moving party will have the burden of proof on an issue at trial, the movant must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. On an issue as to which the nonmoving party will have the burden of proof, however, the movant can prevail merely by pointing out that there is an absence of evidence to support the nonmoving party's case. See *id.* If the moving party meets its initial burden, the nonmoving party must set

forth, by affidavit or as otherwise provided in Rule 56, "specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); FED.R.CIV.PROC. 56(e).

In judging evidence at the summary judgment stage, the court does not make credibility determinations or weigh conflicting evidence. Rather, it draws all inferences in the light most favorable to the nonmoving party. See *T.W. Electrical Service, Inc. v. Pacific Electrical Contractors Ass'n*, 809 F.2d 626, 630–31 (9th Cir. 1987). The evidence presented by the parties must be admissible. FED.R.CIV.PROC. 56(e). Conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment. See *Falls Riverway Realty, Inc. v. Niagara Falls*, 754 F.2d 49, 56 (2d Cir.1985); *Thornhill Pub. Co., Inc. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir.1979).

### B. Standard Governing Alter Ego Liability

■ Wady contends that defendants breached the contract of insurance and the duty of good faith and fair dealing implied in it. "Although an action for bad faith breach of the covenant of good faith and fair dealing sounds in tort, the duty of good faith and fair dealing derives from and exists solely because of the contractual relationship between the parties." *Austero v. National Cas. Co. of Detroit, Mich.*, 62 Cal.App.3d 511, 515, 133 Cal.Rptr. 107 (1976). Thus, a defendant cannot be held liable for breach of the duty of good faith and fair dealing if it was not party to the underlying contract. See *Gruenberg v. Aetna Ins. Co.*, 9 Cal.3d 566, 576, 108 Cal.Rptr. 480, 510 P.2d 1032 (1973).

UnumProvident maintains that it was not a party to the insurance contract be-

tween Wady and Provident.[23] Wady does not dispute this. Rather, she asserts that UnumProvident is Provident's alter ego, and thus is equally liable for its breach of contract and breach of the covenant of good faith and fair dealing.[24]

"The alter ego doctrine arises when a plaintiff comes into court claiming that an opposing party is using the corporate form unjustly and in derogation of the plaintiff's interests. In certain circumstances the court will disregard the corporate entity and will hold the individual shareholders liable for the actions of the corporation." *Mesler v. Bragg Management Co.*, 39 Cal.3d 290, 300, 216 Cal.Rptr. 443, 702 P.2d 601 (1985). The purpose of the doctrine is to bypass the corporate entity for the sole purpose of avoiding injustice. Its "essence... is that justice be done[,] ... [and t]hus the corporate form will be disregarded only in narrowly defined circumstances and only when the ends of justice so require." *Id.* at 301, 216 Cal.Rptr. 443, 702 P.2d 601. "The terminology 'alter ego' or 'piercing the corporate veil' refers to situations where there has been an abuse of corporate privilege, because of which the equitable owner of a corporation will be held liable for the actions of the corporation." *Roman Catholic Archbishop of San Francisco v. Superior Court*, 15 Cal.App.3d 405, 411, 93 Cal.Rptr. 338 (1971) (citing *Minton v. Cavaney*, 56 Cal.2d 576, 579, 15 Cal.Rptr. 641, 364 P.2d 473 (1961)). Plaintiff bears the burden of proof on this issue. See *Minifie v. Rowley*, 187 Cal. 481, 488, 202 P. 673 (1921).

Before the doctrine may be invoked, two elements must be established: " '(1) that there be such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist and (2) that, if the acts are treated as those of the corporation alone,

an inequitable result will follow.' " *Mesler, supra,* 39 Cal.3d at 300, 216 Cal.Rptr. 443, 702 P.2d 601 (quoting *Automotriz Del Golfo De California S.A. De C.V. v. Resnick,* 47 Cal.2d 792, 796, 306 P.2d 1 (1957)). See also *AT & T v. Compagnie Bruxelles Lambert,* 94 F.3d 586, 591 (9th Cir.1996). "[O]nly a difference in wording is used in stating the same concept where the entity sought to be held liable is another corporation instead of an individual." *Las Palmas Associates v. Las Palmas Center Associates,* 235 Cal.App.3d 1220, 1249, 1 Cal. Rptr.2d 301 (1991). "Among the factors to be considered in applying the doctrine are commingling of funds and other assets of the two entities, the holding out by one entity that it is liable for the debts of the other, identical equitable ownership in the two entities, use of the same offices and employees, and use of one as a mere shell or conduit for the affairs of the other." *Roman Catholic Archbishop, supra,* 15 Cal.App.3d at 411, 93 Cal.Rptr. 338 (citing *Associated Vendors, Inc. v. Oakland Meat Co.,* 210 Cal.App.2d 825, 837, 26 Cal.Rptr. 806 (1962)).

### C. Whether Plaintiff May Argue An "Unpleaded" Alter Ego Theory To Avoid Summary Judgment

Defendant contends that the court should not consider plaintiff's alter ego claim, because Wady did not allege a unity of interest between UnumProvident and Provident in the complaint. UnumProvident cites *Johnson v. Methodist Med. Center of Ill.,* 10 F.3d 1300, 1304–05 (7th Cir. 1993), which held that a plaintiff could not rely on negligence allegations that were not contained in her complaint to survive summary judgement. There, the court had denied plaintiff leave to amend the complaint a third time to add new negli-

---

**23.** See, e.g., Def's Mot. at 4:27–28.

**24.** Pl's Opp. at 6:4–17.

gent acts to her allegations. Plaintiff then attempted to rely on such acts to avoid summary judgment, essentially conceding that defendant was entitled to summary judgment on the claims asserted in the complaint. The court held that plaintiff had waived her unpleaded theories of negligence, and that the new allegations were irrelevant to the summary judgment motion. *Id.* at 1305. See also *Fleming v. Lind–Waldock, & Co.,* 922 F.2d 20, 24 (1st Cir.1990) ("Simply put, summary judgment is not a procedural second chance to flesh out inadequate pleadings")

Wady's complaint contains no allegations regarding the relationship between Unum-Provident and Provident. It alleges simply that UnumProvident is a Maine corporation with its principal place of business in Maine that transacts business in California.[25] The only other substantive allegation in the complaint that could even be read as mentioning UnumProvident is found in paragraph 9, which reads, in pertinent part: "UNUM's denial of the plaintiff's disability benefits claim constitutes a breach of the insurance contract between Provident Life and the plaintiff."[26] While the caption of each cause of action is directed against UnumProvident as well as Provident, none of the substantive allegations mentions UnumProvident.

More pertinent for purposes of the current discussion, none contains any reference to UnumProvident being the alter ego of Provident. None alleges that UnumProvident treats the assets of Provident as its own, that it commingles funds with Provident, that it controls the finances of Provident, that it shares officers or directors with Provident, that Provident is undercapitalized, or that the separateness of the subsidiary has ceased. Without

such allegations, the issue is not adequately raised, and UnumProvident was not put on notice that this was a theory against which it should be prepared to defend. See, e.g., *Hockey v. Medhekar,* 30 F.Supp.2d 1209, 1211, n. 1 (N.D.Cal.1998) (dismissing a securities fraud claim against individual defendants on the basis that an allegation that corporations were alter egos for those defendants was insufficient to state a claim); *Hokama v. E.F. Hutton & Company, Inc.,* 566 F.Supp. 636, 647 (C.D.Cal.1983) (holding that plaintiff had failed to state a claim against an individual defendant because the complaint contained only a conclusory allegation of alter ego status without alleging the elements of the doctrine). Compare *Federal Reserve Bank of San Francisco v. HK Systems,* No. 95 CV 4700(SJ), 1997 WL 227955, * 5 (N.D.Cal. May 1, 1997) (finding, on a Rule 12(b)(6) motion, that the allegations of the complaint were sufficient to state a claim based on alter ego liability, because they alleged that the defendant parent corporation "dominated and controlled" the subsidiary "to such an extent that the individuality and separateness of the subsidiary had ceased," that the parent "disregarded the corporate form of the subsidiary" and that subsidiary was so inadequately capitalized that its capitalization was "illusory").

The complaint was only filed in December 2001, however, and this motion was brought some five months later, in April 2002. Given the short time frame, the court would be inclined to allow Wady to amend her complaint to allege the alter ego theory before entering summary judgment, if this were the only impediment to assertion of the theory. See, e.g., *Mesler,*

---

25. Complaint, ¶ 3.

26. *Id.,* ¶ 9. The complaint specifically notes, however, that UNUMProvident Corporation

will be referred to as "UNUMProvident," not "UNUM." (*Id.,* ¶ 3.) Thus, it is not clear that even this allegation is meant to refer to UnumProvident.

*supra,* 39 Cal.3d at 297, 216 Cal.Rptr. 443, 702 P.2d 601 (holding that the trial court should have allowed plaintiff to amend the complaint to add an alter ego theory). Because the court concludes *infra* that Wady's alter ego argument is futile, however, it need not take such a step. See *Johnson v. American Airlines, Inc.,* 834 F.2d 721, 724 (9th Cir.1987) (affirming district court's denial of a motion to amend complaint where the amendment would have been "futile" and would inevitably have been defeated on summary judgment).

### D. Whether Plaintiff Has Raised A Triable Issue Of Fact Regarding Unity Of Interest

"To justify piercing the corporate veil on an alter ego theory in order to hold a parent corporation liable for the acts or omissions of its subsidiary, a plaintiff must show that there is such a unity of interest and ownership between the two corporations that their separate personalities no longer exist." *Laird v. Capital Cities/ABC Inc.,* 68 Cal.App.4th 727, 741, 80 Cal.Rptr.2d 454 (1998) (rejecting a claim of alter ego for failure to show unity of interest). See also *Institute of Veterinary Pathology, Inc. v. California Health Laboratories, Inc.,* 116 Cal.App.3d 111, 119–20, 172 Cal.Rptr. 74 (1981) ("'[T]he plaintiff must show 'specific manipulative conduct' by the parent toward the subsidiary which 'relegate[s] the latter to the status of merely an instrumentality, agency, conduit or adjunct of the former . . .' ")

■ Wady's evidence of an alter ego relationship between UnumProvident and Provident is comprised primarily of claim forms and correspondence written on UnumProvident letterhead that references the business of UnumProvident's subsidiaries using pronouns such as "we," "us" or "our." [27] She also notes that the two entities share a number of corporate officers and directors,[28] and that UnumProvident freely "borrows" money from its subsidiary.[29]

■ Plaintiff's evidence does not support the inference she seeks to have the court draw. See, e.g., *Calvert v. Huckins,* 875 F.Supp. 674, 678 (E.D.Cal.1995) (finding that the fact a parent company had an ownership interest in a subsidiary, that the parent and the subsidiary had some interlocking directorates and officers, that the parent had incorporated subsidiary's income figures into its financial reports, that the parent had guaranteed a promissory note for the subsidiary, and that the parent and the subsidiary shared counsel was not sufficient to confer alter ego status). None of the proffered documents suggests that there is any question of undercapitalization, commingled funds or disregard for corporate formalities, all factors in evaluating whether there is a unity of interest between two entities. While corporate entities may be closely related, "[a] parent corporation may be directly involved in financing and macro-management of its subsidiaries . . . without exposing itself to a charge that each subsidiary is merely its alter ego." *Doe v. Unocal Corp.,* 248 F.3d 915, 926 (9th Cir.2001) (citing *Fletcher v. Atex, Inc.,* 68 F.3d 1451, 1459–60 (2d Cir. 1995) (no alter ego liability where parental approval required for leases, major capital expenditures and the sale of its subsidiary's assets)); *Joiner v. Ryder Sys.,* 966 F.Supp. 1478, 1485 (C.D.Ill.1996) (no alter ego liability where parent approved subsidiaries' acquisitions and capital budget);

---

**27.** Pl.'s Opp. Exs. 1–17; Pl.'s Opp. at 5:24–6:3.

**28.** Pl's Opp. at 8:6–12.

**29.** Exhibit 27 to Pl's Opp; Pl's Opp. at 8:13–18.

*Akzona, Inc. v. E.I. Du Pont De Nemours and Co.*, 607 F.Supp. 227, 238 (D.Del.1984) (blurring corporate separateness in the language of an annual report, an overlap of boards of directors, parental approval of large capital expenditures, and parental guaranty of third-party loans to a subsidiary was insufficient to establish an alter ego relationship); *In re Hillsborough Holdings Corp.*, 166 B.R. 461, 473–74 (Bankr.M.D.Fla.1994) (it was proper for a parent to provide all of the financing to a subsidiary), aff'd., 176 B.R. 223 (M.D.Fla. 1994).

In *Tomaselli v. Transamerica Ins. Co.*, 25 Cal.App.4th 1269, 31 Cal.Rptr.2d 433 (1994), the court specifically addressed the type of evidence on which Wady relies most heavily here. There, plaintiffs introduced the 1990 Annual Report of Transamerica Corporation in support of an award of punitive damages. This was the parent corporation of the defendant company, Transamerican Insurance Company. *Id.* at 1283, 31 Cal.Rptr.2d 433. Plaintiffs asserted that the entities were alter egos, citing the

> "use of forms and letterhead bearing the umbrella name of 'Transamerica Insurance Group'; ... internal communications ... on forms using 'Transamerica Insurance Group' and 'Transamerica Insurance Services' stationery; and ... [a claims rerpresentative] indicat[ing] she was representing 'Transamerica Insurance Group' in her initial correspondence with Tomasellis. Tomasellis also seize on passages in the annual report as allegedly demonstrating that the various entities commingled funds, represented themselves as being a single entity, and shared some common officers and directors. However, Tomasellis misapprehend the true import of these passages. For example, the language they cite as evidence of 'commingling' merely re-

flects that the parent company receives money from subsidiaries in the form of dividends and interest on loans, and reinvests some portion of those funds in the subsidiaries. These are precisely the kinds of transactions which would occur among entities which respect the corporate separateness among entities".

The court held that these facts did not constitute a "significant showing of unity of interest." *Id.* at 1285, 31 Cal.Rptr.2d 433. More importantly, it held, there was "nothing to suggest how an 'injustice' would befall Tomasellis if the punitive damage award were limited to a percentage of appellant's value rather than that of the parent company." *Id.* at 1285–86, 31 Cal.Rptr.2d 433. It reversed the punitive damages award that had been entered on the basis of this evidence as a result.

■■■ Wady contends that, because UnumProvident borrows money from Provident, this constitutes commingling of assets such that the two must be considered alter egos.[30] Disregard for the corporate form through undercapitalization or commingling of assets can lead to a finding of alter ego liability. See *Slottow v. American Cas. Co. of Reading, Pennsylvania*, 10 F.3d 1355, 1360 (9th Cir.1993) ("[U]nder California law, 'inadequate capitalization of a subsidiary may alone be a basis for holding the parent corporation liable for the acts of the subsidiary'"). Wady presents no evidence, however, to suggests that UnumProvident's borrowing are other than legitimate inter-corporate transactions; in fact, the document plaintiff proffers indicates that the borrowed funds were promptly repaid with interest. Financial transactions between a parent and subsidiary do not make the parent liable for the subsidiary's debts, unless the parent attempts to liquidate the subsidiary for the purpose of avoiding its liabilities. See

---

**30.** Pl's Opp., at 8:13–17.

*Sonora Diamond Corp. v. Superior Court,* 83 Cal.App.4th 523, 539, 99 Cal.Rptr.2d 824 (2000) ("The parent is not 'exposed to liability for the obligations of [the subsidiary] when [the parent] contributes funds to [the subsidiary] for the purpose of assisting [the subsidiary] in meeting its financial obligations and not for the purpose of perpetrating a fraud,' ") quoting *Lowell Staats Mining Co., Inc. v. Pioneer Uravan, Inc.,* 878 F.2d 1259, 1263 (10th Cir. 1989). Here, Wady does not assert that any of UnumProvident's transactions with Provident were designed improperly to avoid liability, much less present evidence to support such a theory.

Finally, Wady disputes UnumProvident's assertion that it "has never assumed liability for any policies issued by Provident or for any claims under Provident plans."[31] She presents no evidence to the contrary, however,[32] and the court concludes that she has failed to raise a triable issue of fact regarding any issue relevant to a "unity of interest" between UnumProvident and Provident Life and Accident Insurance Company.

### E. Whether There Is A Triable Issue Of Fact Regarding Inequitable Results

 As noted earlier, the alter ego test is unmistakably two-pronged. Even if the court were to find that Wady had raised a triable issue of fact regarding the "unity of interest" prong, it would nonetheless have to enter summary judgment in UnumProvident's favor, as Wady has failed to raise any genuine issue of material fact regarding the second, or "inequitable results," prong. See *Shapoff v. Scull,* 222 Cal. App.3d 1457, 1471, 272 Cal.Rptr. 480 (1990) ("Thus it is plain that contrary to the defendants' argument on appeal, abuse of the corporate privilege by itself does not

require that a court disregard the separate identity of a corporation. There must be some equitable purpose which will be served by ignoring the corporate form"). A court will pierce the corporate veil only where failure to do so "would be to defeat the rights and equities of third persons." *Kohn v. Kohn,* 95 Cal.App.2d 708, 720, 214 P.2d 71 (1950). See also *Doney v. TRW, Inc.,* 33 Cal.App.4th 245, 248, 39 Cal. Rptr.2d 292 (1995) ("The alter ego doctrine will only be applied to avoid an inequitable result"); *McLaughlin v. L. Bloom Sons Co., Inc.,* 206 Cal.App.2d 848, 854, 24 Cal. Rptr. 311 (1962) (noting that the court should bypass the corporate entity to reach an alter ego corporation for the sole purpose of avoiding an injustice, otherwise the corporations remain separate). Wady has not asserted that inequitable results will follow if the corporate wall between Provident and UnumProvident is maintained, much less submitted evidence to that effect. She has not identified any right that will be defeated if UnumProvident is allowed to maintain a separate identity from its subsidiary nor any prejudice she will suffer as a result. Provident is fully able to respond to any damages award Wady may recover in this action. The Court thus concludes that no genuine issue of material fact exists to support Wady's alter ego argument, and that UnumProvident is entitled to judgment as a matter of law.

### III. CONCLUSION

For the reasons stated, the court grants summary judgment in favor of defendant UnumProvident.

---

**31.** Pl.'s Issues, ¶ 4.

**32.** Pl.'s Opp., Exs. 1–17, 27.