Irene GRUNBLATT, Plaintiff,

v.

UNUMPROVIDENT CORPORATION,
Defendant.

Civil Action No. CV–01–8278 (DGT).

United States District Court,
E.D. New York.

July 14, 2003.

Yaakov Kanovsky, Brooklyn, NY, for Plaintiff.

Evan L. Gordon, New York City, for Defendant.

### MEMORANDUM AND ORDER

TRAGER, District Judge.

Plaintiff Irene Grunblatt initiated this diversity action against UnumProvident Corp. ("UnumProvident") as the sole beneficiary of a life insurance policy purchased

by Maurice Grunblatt, her deceased husband. UnumProvident filed this motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. UnumProvident claims that the action lacks diversity of citizenship and does not meet the amount in controversy requirement. Plaintiff cross-moved seeking to amend the caption of the action to read: *"IRENE GRUNBLATT v. UNUMPROVIDENT CORP.,* as Administrator for First UNUM Life Insurance Company of New York." Plaintiff also seeks an order granting her costs of the motion.

## Background

The following assumes the veracity of the facts stated in the complaint and the documents referenced or attached therein. Plaintiff is a New York State citizen residing in Brooklyn, New York. (Compl.¶ 4.) In March 1986, Plaintiff's husband, Maurice Grunblatt, purchased a whole-life insurance policy from Union Mutual Life Insurance Policy of New York. (Compl.¶ 6.) He was fifty-nine years old at the time. (*Id.,* Ex. A.) The policy provided for a death benefit of $50,000, payable to plaintiff, in the event of Mr. Grunblatt's death. (*Id.*) Mr. Grunblatt continued to make timely payments under this policy until he died on January 31, 1990. (*Id.* ¶¶ 7–8.)

Neither UnumProvident nor First Unum ever contacted plaintiff regarding the policy, and plaintiff was unaware that she was the beneficiary of the policy and has never received any payments under the policy. (*Id.* ¶ 6.) UnumProvident did not maintain records of accounts dating back to that period and is itself unsure whether, and if so, to whom, the death benefit was ever paid. (Kanovsky Aff.,

Ex. B; Britos Rep. Aff. ¶ 3.) Plaintiff became aware of the policy in December 2000 when her son discovered a cancelled check dated September 15, 1989, payable to "Unum Ins. Co." (Compl.¶ 10.)

The original underwriter of the policy, Union Mutual Life Insurance Policy of New York, no longer exists.[1] (Britos Aff. ¶ 2.) The policy is now held by First Unum Life Insurance Company ("First Unum"), a New York corporation which sells insurance policies only in New York. (Britos Rep. Aff. ¶ 6.) First Unum is a wholly owned subsidiary of Unum Holding Company, which, in turn, is a subsidiary of defendant UnumProvident. (Britos Aff. ¶ 3.) UnumProvident is a Delaware corporation. (Compl. ¶ 6; Britos Aff. ¶ 4.)

Although First Unum underwrites insurance policies in New York, it does not process claims or handle consumer inquiries. (Britos Rep. Aff. ¶ 7.) Those tasks are performed by UnumProvident at its Maine facilities. (*Id.*) The records pertaining to the life insurance policy at issue were maintained by UnumProvident, and consumer inquiries for policies underwritten by First Unum were handled by UnumProvident. (*Id.*) After discovering the existence of the policy, plaintiff contacted UnumProvident in early 2001. (Compl.¶ 10.) Plaintiff's insurance broker, Isaac Gottesman, submitted plaintiff's claim to UnumProvident, and both Mr. Gottesman and plaintiff received several correspondences from UnumProvident in response. (Kanovsky Aff., Ex. B.) Through the latter part of 2001, plaintiff attempted to collect the death benefit without success. (*Id.*) Plaintiff's claim was ultimately rejected, and this action followed.

---

1. Although not alleged in the complaint, plaintiff now claims that the policy at issue is a consolidation of four policies that were part of Mr. Grunblatt's pension plan. (Aff. of Isaac Gottesman ¶¶ 4–6.) Plaintiff claims that these policies were issued by Union Mutual, allegedly the predecessor to UnumProvident. Despite plaintiff's intimations that this assertion would raise some kind of federal ERISA claim, these policies are not relevant to this case because they are no longer in effect.

(Compl.¶¶ 11–13.) Plaintiff's complaint alleged breach of fiduciary duty, bad faith and breach of contract.

## Discussion

### (1)

### Amount in Controversy

■ Under federal diversity jurisdiction, the court has jurisdiction over "all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between ... citizens of different States." 28 U.S.C. § 1332. The sum demanded "by the plaintiff controls if the claim is apparently made in good faith." *Doctor's Assocs., Inc. v. Hamilton,* 150 F.3d 157, 160 (2d Cir.1998) (internal quotation marks omitted). Only when "it appears *to a legal certainty* that the claim is really for less than the jurisdictional amount," must the action be dismissed. *Id.* (emphasis in original) (internal quotation marks omitted).

■ Plaintiff acknowledges that the death benefit amount of $50,000 is below the statutory floor of $75,000. However, plaintiff points to the insurance contract, which stipulates that

> If death benefits are payable in a single payment, we will increase the proceeds by paying interest from the date of death to the date of payment. We will pay interest at a rate set by us, or by law, if greater.

*See* Complaint, Ex. A, at 5. At a rate of 4.5%, which plaintiff claims is guaranteed under the agreement, the death benefit plus the interest would be no less than $85,000.

■ Although 28 U.S.C. § 1332 specifically mandates the exclusion of interest in determining the amount in controversy, interest is nonetheless included when it is an essential ingredient of the principal claim. *See Brown v. Webster,* 156 U.S. 328, 330, 15 S.Ct. 377, 39 L.Ed. 440 (1895) (holding that interest claimed by the plain-

tiff was properly calculated in the amount in controversy where the interest is a "principal demand" rather than an "accessory demand"); *Transaero, Inc. v. La Fuerza Area Boliviana,* 24 F.3d 457, 461 (2d Cir.1994) ("[W]here ... interest is owed as part of an underlying contractual obligation, unpaid interest becomes part of the principal for jurisdictional purposes."); *Brecher v. Great Eastern (Bermuda) Ltd.,* 1992 WL 96345, at *3–4 (S.D.N.Y. Apr. 27, 1992) (holding that interest is calculated to determine amount in controversy where party sought to enforce settlement agreement that included interest provision for delay in payments required by the settlement); *see also Edwards v. Bates County,* 163 U.S. 269, 272, 16 S.Ct. 967, 969, 41 L.Ed. 155 (1896) (holding that interest on bonds is included in calculation of amount in controversy).

In *Brown,* 156 U.S. at 328, 15 S.Ct. at 377, the plaintiff had purchased land from the defendant, but was later evicted by a third party who claimed better title. The plaintiff then sued the defendant for the purchase price plus the interest to which the plaintiff was entitled under Nebraska law. *See id.* The defendant's argument that the interest should be excluded from the amount in controversy was rejected by the Court, which held that it "overlook[ed] the elementary distinction between interest as such and the use of an interest calculation as an instrumentality in arriving at the amount of damages to be awarded on the principal demand." *Id.* at 329, 15 S.Ct. at 377. The Court held that the amount in controversy requirement was satisfied because the interest was part of the "entire damage claimed." *Id.* at 330, 15 S.Ct. 377, 39 L.Ed. 440.

Some legal commentaries and cases outside this circuit have criticized or narrowly interpreted the *Brown* holding. *See, e.g., Tri–State Refractories Corp. v. Certified Indus. Techs., Inc.,* 2001 WL 388871, at

\*2 (S.D.Ind. Mar. 9, 2001) ("To modern readers, the distinction described in *Brown v. Webster* may seem more subtle than elementary[.]"); *Brecher*, 1992 WL 96345, at \*1 n. 3 ("The distinctions between interest 'as such' and interest as a principal claim have been criticized by commentators as being unrealistic."). Many courts outside this circuit have calculated interest only if the interest had already been capitalized into the principal claim (such as the enforcement of a judgment that was based on both principal and interest), or if the principal is "money for hire" such as the scheduled interest on a loan, but not, for example, interest on a loan after it had matured because such interest was accruing solely as a "penalty for delay in payment." *Brainin v. Melikian*, 396 F.2d 153, 154–55 (3d Cir.1968) (distinguishing "between interest imposed as a penalty for delay in payment, and interest exacted as the agreed upon price for the hire of money"); *see Regan v. Marshall*, 309 F.2d 677, 678 (1st Cir.1962) ("[I]t makes no difference whether the interest which is sought accumulated upon the principal obligation sued upon because of contract, or by common law, or by statute, or whether the interest be termed a penalty or damages, so long as it is an incident arising solely by virtue of a delay in payment.").

These cases argue that the facts in *Brown* are unique in that the cause of action there was triggered only after the interest had accrued, and that allowing any interest that is a penalty for delay of payment—even if contractual—would frustrate the congressional intent to exclude interest in order to avoid plaintiffs deliberately delaying the filing of the suit in order to accumulate the requisite amount in controversy. *See Regan*, 309 F.2d at 678; *Tri–State*, 2001 WL 388871, at \*2. Indeed, two circuit courts have ruled in similar

cases involving delayed insurance payments that the interest due is not included in calculating the amount in controversy. *See State Farm Mut. Auto. Ins. Co. v. Narvaez*, 149 F.3d 1269, 1271 (10th Cir. 1998) (dismissing *sua sponte* motorist insurance claim for failure to satisfy amount in controversy because interest for delay is not included in calculation of amount); *Principal Mut. Life Ins. Co. v. Juntunen*, 838 F.2d 942, 943 (7th Cir.1988) (per curiam) (holding that interest on death benefit is not included in amount in controversy calculation).

Nonetheless, the Second Circuit has interpreted the Supreme Court's jurisprudence on this issue as resting on the notion that when interest "is owed as part of an underlying contractual obligation[,]" it is part of the principal claim. *Transaero*, 24 F.3d at 461 (citing *Edwards*, 163 U.S. at 269, 16 S.Ct. at 967). Moreover, the Supreme Court's own understanding of the *Brown* holding suggests that it would include interest that was contractually accruing in the amount in controversy calculation. *See Springstead v. Crawfordsville State Bank*, 231 U.S. 541, 542, 34 S.Ct. 195, 58 L.Ed. 354 (1913) (indicating that under *Brown*, a party's contractual obligation to pay for attorney's fees would not be merely an "accessory right" and should be calculated in the amount in controversy). Consequently, the *Brown* holding remains good law, and, as interpreted by the Second Circuit, the interest that contractually accrued under plaintiff's policy is properly calculated as part of the amount in controversy. This is particularly true where, as here, the interest had accrued before the plaintiff's discovery of the policy, negating any concern of deliberate delay to accrue the requisite amount in controversy. Accordingly, it cannot be said with legal certainty that the amount in controversy is less than $75,000.[2]

---

**2.** Plaintiff also argues that the potential

award of attorney's fees should be calculated

## (2)
### Diversity of Citizenship

Defendant argues that this action lacks diversity of citizenship because the entity responsible for the policy is a New York corporation. Federal jurisdiction under 28 U.S.C. § 1332 requires that "the suit must be between parties of different states or between a citizen of one state and a citizen of a foreign state." *Zadora–Gerlof v. Axa Nordstern Art Ins. Corp.,* 2002 WL 31324138, at *1 (S.D.N.Y. Oct. 17, 2002). "[I]t is well established that the party seeking to invoke jurisdiction under 28 U.S.C. § 1332 bears the burden of demonstrating that the grounds for diversity exist and that diversity is complete." *Herrick Co., Inc. v. SCS Communications, Inc.,* 251 F.3d 315, 322–23 (2d Cir.2001) (internal quotations omitted).

Here, plaintiff acknowledges that First Unum is a New York corporation, but makes two arguments in support of diversity jurisdiction: a) federal diversity jurisdiction exists for First Unum because its "nerve center" is in Maine, not in New York; and b) UnumProvident, by virtue of its acting on behalf of First Unum, is the party responsible for the policy and therefore a proper out-of-state defendant.

■ Under 28 U.S.C. § 1332, a corporation is "deemed to be a citizen of any State by which it has been incorporated *and* of the State where it has its principal place of business." *Id.* (emphasis added). A corporation's principal place of business is

determined "by one of two well-known tests—the 'nerve center' test or the 'place of activities/public impact' test." *Farrell v. M.S. Carriers, Inc.,* 2000 WL 432850, at *4 (W.D.N.Y. Apr. 18, 2000); *see Pinnacle Consultants, Ltd. v. Leucadia Nat'l Corp.,* 101 F.3d 900, 906 (2d Cir.1996). However, the principal place of business prong does not replace the citizenship of the state of incorporation; it merely adds another state of citizenship—*either* of which could destroy diversity. *See* 28 U.S.C. § 1332; *R.G. Barry Corp. v. Mushroom Makers, Inc.,* 612 F.2d 651, 654–55 (2d Cir.1979) (reviewing historical development of § 1332 and reasons for providing for dual corporate citizenship). Accordingly, in determining whether a suit against First Unum would possess the requisite diversity of citizenship, the inquiry ends at its state of incorporation: New York. First Unum's principal place of business—even if out-of-state—cannot compensate for the loss of diversity when it is being sued by a New York plaintiff because First Unum is a New York corporation and, therefore, lacks diversity. Accordingly, plaintiff's inclusion of First Unum as a defendant would divest this Court of jurisdiction in this matter.

■ In the alternative, plaintiff argues that UnumProvident is a proper party to this suit. Plaintiff does not dispute that UnumProvident was not the underwriter of this policy, and that plaintiff does not have a direct contractual or fiduciary relationship with UnumProvident. However,

in determining the amount in controversy, and relies on *Werwinski v. Ford Motor Co.,* 286 F.3d 661, 664 (3d Cir.2002), where the court included attorney's fees in determining the amount in controversy. However, that case is clearly inapposite because attorney's fees in that case was a statutory feature of that action and thus part of the principal. *See Werwinski v. Ford Motor Co.,* 2000 WL 375260, at *3 (E.D.Pa. Apr. 11, 2000) ("[A]lthough § 1332 excludes 'interest and costs'

from the amount in controversy, attorney's fees are necessarily part of the amount in controversy if such fees are available to successful plaintiffs under the statutory cause of action."); *In re Ciprofloxacin Hydrochloride Antitrust Litig.,* 166 F.Supp.2d 740 (E.D.N.Y. 2001) ("The Second Circuit has held that attorney's fees may be used to satisfy the amount in controversy only where they are recoverable as of right pursuant to statute or contract.").

plaintiff argues that, by virtue of Unum-Provident's overlapping operations, close relationship with, and representation of First Unum, UnumProvident is a proper party and is responsible for the obligations of its subsidiary, First Unum.

Plaintiff seeks to impose liability on UnumProvident as the "administrator" of the policy, but fails to provide an independent source of liability other than that the policy that is admittedly underwritten by First Unum, a UnumProvident subsidiary. As such, plaintiff's theory of liability is an apparent attempt to "pierce the corporate veil," which is typically a "fact specific inquiry" not amenable to resolution in a motion to dismiss.[3] *MAG Portfolio Consultant, GMBH v. Merlin Biomed Group LLC*, 268 F.3d 58, 63 (2d Cir.2001). However, to the extent plaintiff could pierce the corporate veil to impose liability on UnumProvident as the alter ego of First Unum, diversity jurisdiction would be lost as a result. *See Levy v. Plastocks, Inc.*, 744 F.Supp. 570, 572 (S.D.N.Y.1990) (holding that "even assuming *arguendo* that the corporate veil could be pierced," the action would be dismissed for lack of diversity because the alter ego would "be deemed to have the same citizenship as that of [the non-diverse defendants]"); *Chesco Co. v. Nat'l Gypsum Co.*, 649 F.Supp. 65, 66 (E.D.N.Y.1986).

■ Although an alter ego claim is "perhaps most commonly used to 'pierce the corporate veil' for the purpose of imposing liability upon a parent for the acts or agreements of its subsidiary, a separate version of alter ego analysis is used to determine the citizenship of related companies for diversity purposes." [4] *In re Air Disaster Near Cove Neck, N.Y.*, 774 F.Supp. 725, 727 n. 4 (E.D.N.Y.1991). However, a jurisdictional alter ego analysis does not extend diversity jurisdiction by allowing a non-diverse corporation to assume the citizenship of its out-of-state alter ego; it merely adds "an additional domicile for jurisdictional purposes." *Id.*; *see also Zadora–Gerlof*, 2002 WL 31324138, at *1 (" '[T]he alter ego doctrine may be used to add places of citizenship to the abrogation of diversity jurisdiction but may not be used to extend such jurisdiction.' ") (quoting *Panalpina Welttransport GmBh v. Geosource, Inc.*, 764 F.2d 352, 354–55 (5th Cir.1985)). Two corporations that are deemed to be alter egos of each other acquire the citizenship of each other. *See Zadora–Gerlof*, 2002 WL 31324138, at *1. Consequently, "if a parent were sued as a result of activities of a subsidiary, the alter ego doctrine would attribute the subsidiary's place of incorporation to the parent even if such resulted in destroying complete diversity." *Panalpina Welt-*

---

**3.** Defendant submitted a published opinion, *Wady v. Provident Life and Accident Ins. Co. of Am.*, 216 F.Supp.2d 1060 (C.D.Cal.2002), with similar—but not identical—facts in which the court granted summary judgment. In *Wady*, the plaintiff sought to pierce the corporate veil and recover from UnumProvident for a policy underwritten by another subsidiary, Provident Life and Accident Insurance Company. However, that opinion is of limited utility here given that it involves the application of California law, was decided with additional facts more readily available at the summary judgment stage and apparently did not involve the jurisdictional question arising here.

**4.** The jurisdictional alter ego analysis used by federal courts is not a mirror image of the analysis used for piercing the corporate veil under New York law. However, any distinction is, for our purposes, without import because the standard for piercing the veil under New York law is more stringent than that used by federal courts. New York law adds an equitable element to its alter ego analysis that is not present in the federal jurisdictional analysis. *See MAG Portfolio Consultant*, 268 F.3d at 63 (holding that to impose alter ego liability under New York law, plaintiff must also show that the owner's "domination was used to commit a fraud or wrong that injured the party seeking to pierce the veil").

*transport GmBh,* 764 F.2d at 355 (citation omitted).

Here, insofar as First Unum is considered the alter ego of UnumProvident, First Unum's New York citizenship is imputed to UnumProvident, and diversity jurisdiction is once again lacking. Accordingly, UnumProvident is not a proper party to this suit, and the claims against it must be dismissed. Plaintiff has simply chosen the wrong forum to seek redress for her grievance.

### Conclusion

Defendant's motion to dismiss is granted; plaintiff's cross-motion is denied. Having failed to prevail, plaintiff's request for an order granting the costs of the motion is denied as moot. The case is dismissed. The Clerk of the Court is directed to close the case.

SO ORDERED.