Patricia MEDING, Balallan Ltd., Capital Direct, LLC, and Marketview Financial Group, Inc., Plaintiffs,

v.

RECEPTOPHARM, INC. f/k/a Receptogen, Inc., Defendant.

No. CV–06–5092(BMC)(JO).

United States District Court, E.D. New York.

Nov. 13, 2006.

David A., Schrader, Schrader & Schoenberg, LLP., New York, NY, for Plaintiffs.

Barry I. Levy, Shapiro, Beilly, Rosenberg, Albert & Fox LLP, New York, NY, for Defendant.

## MEMORANDUM DECISION AND ORDER REMANDING CASE

COGAN, District Judge.

The motion to remand that is presently before me requires interpretation of the word "interest," as used in 28 U.S.C. § 1332(a). That statute defines the federal courts' diversity jurisdiction as requiring that "the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs." Defendant, which removed this action on various promissory notes from state court, contends that the 10% post-maturity default interest provided for in the notes is not the kind of interest that the statute excludes, and, therefore, should be included in determining the amount in controversy. In other words, defendant contends that "interest" as used in the statute refers to interest that accrues by operation of law, and not interest that is provided for in a contractual agreement between parties.

### BACKGROUND

Plaintiffs commenced this action in state court on August 18, 2006 by way of a motion for summary judgment in lieu of complaint. That type of action, provided for under § 3213 of the New York State Civil Practice Law and Rules ("CPLR"), is peculiar to New York State practice and aims to allow expedited resolution of ac-

tions based on promissory notes, judgments, or accounts stated. By limiting the proceeding to a motion, it has certain potential advantages for the plaintiffs. Among other things, courts are reluctant to allow counterclaims, and often require that they be brought in a new, separate lawsuit so as not to delay the resolution of the CPLR § 3213 motion. *See* CPLR 3213, Official Commentary C3213:17 (McKinney's 2004). In addition, subject to local part rule, discovery is automatically stayed. CPLR 3214(b). Moreover, since the action only involves a motion, it has the potential for a much faster resolution than a plenary action. Although the defendant can overcome these advantages upon leave of court, the defendant bears the burden of showing cause to do so.

The instruments at issue here consist of ten promissory notes, six of which are payable to plaintiff Pat Meding, and the other four of which are payable to one of three corporate plaintiffs, each of which Meding owns or controls. Meding is also the former President of defendant, and apparently obtained the notes in exchange for funds that she loaned to or invested in defendant company during her tenure.

The ten notes range in principal amount from $2,500 to $12,000. They have identical terms, differing only as to payee, amount, and date of issuance, the earliest of which is August 8, 2001, and the latest is May 7, 2002. All of the notes matured by their terms on January 2, 2004. They provide for the payment of 8% interest per annum, payable on January 2 of each year, and further provide that if the January 2 payment is not made, then the unpaid interest "will become part of the principal and accrue interest at the same rate." In addition to this annual interest, the notes also provide for default interest, which begins to accrue upon maturity of the notes

at the rate of 10% and continues to accrue until the notes are paid in full.

Defendant timely removed the case based on diversity of citizenship on September 20, 2006. Since the principal amount of the largest note is only $12,000, defendant offers a three-step argument to reach the $75,000 threshold. First, it contends that Meding's six notes should be aggregated. If that is done, the principal amount of those six notes is $52,000. Second, defendant then contends, and plaintiffs do not disagree, that the 8% accrued annual interest should be added to the principal amounts due. That would bring the claim to just under $60,000. Third, defendant contends, and with this, plaintiffs do not agree, that the 10% accrued default interest should be added as of either the date of removal, or, at least, as of the date of commencement of the action in state court. Using the earlier date of commencement in state court (which has less accrued interest), this would bring the claim to $75,476.77, just over the $75,000 threshold.

As to the remaining plaintiffs, defendant contends that the Court should exercise supplemental jurisdiction over their claims under 28 U.S.C. § 1367.

### DISCUSSION

Defendant relies principally upon *Transaero, Inc. v. La Fuerza Area Boliviana,* 24 F.3d 457 (2d Cir.1994). *Transaero* was a collection action where the defendant had made a payment, which the plaintiff applied to extinguish outstanding principal of about $600,000, and then sued to collect nearly $1 million more in outstanding interest. The defendant sought to set aside a default judgment on various grounds, including the failure to comply with what is now Eastern District of New York Local Rule 83.10. That rule requires mandatory arbitration (actually a misnomer, since ei-

ther party has a right to trial *de novo* following the "arbitration") of any controversy for "an amount not in excess of $100,000 [now $150,000], exclusive of interest and costs." The defendant thus argued that the matter should have been referred to arbitration instead of going to default judgment. Construing the term "interest" in the Local Rule *in pari materia* with § 1332(a) of the Judicial Code, the Second Circuit held:

> [W]here, as here, interest is owed as part of an underlying contractual obligation, unpaid interest becomes part of the principal for jurisdictional purposes. We see no reason to treat such interest differently for purposes of determining the scope of compulsory arbitration under the Local Rules of the Eastern District of New York and conclude that arbitration was not required in this case.

*Id.* at 461.

In reaching this conclusion, *Transaero* relied upon *Edwards v. Bates County*, 163 U.S. 269, 16 S.Ct. 967, 41 L.Ed. 155 (1896). *Edwards* was also a collection action on some bonds, which had interest-bearing coupons that had come due. Justice White held for the Court that the coupons, having matured, could not be fairly characterized as "interest" for purposes of determining the amount in controversy:

> Each matured coupon upon a negotiable bond is a separable promise, distinct from the promises to pay the bond or other coupons, and gives rise to a separate cause of action.... [W]hen the interest evidenced by a coupon has become due and payable the demand based upon the promise contained in such coupon is no longer a mere incident of the principal indebtedness represented by the bond, but becomes really a principal obligation. Clearly, such would be the

nature of the claim of one who, as owner of the coupons, and not of the bonds, brought his action to enforce payment of the indebtedness evidenced by the coupons. So, also, before maturity of the bonds, their holder could still have sued upon the matured coupons as an independent indebtedness, and not as a mere accessory to a demand for a recovery of the face of the bonds.... The claim made by the plaintiff on the coupons was in no just sense accessory to any other demand, but was in itself principal and primary. In ascertaining, therefore, the jurisdictional sum in dispute, the sum of the coupons should have been treated as an independent, principal demand, and not as interest....

*Id.* at 271–73, 16 S.Ct. at 968–69 (citations and quotations omitted).

Finally, defendant here relies on Judge Trager's decision in *Grunblatt v. Unum-Provident Corp.*, 270 F.Supp.2d 347 (E.D.N.Y.2003). That action involved a $50,000 life insurance policy that provided for continuing interest accrual until payment in the event that the proceeds were not paid upon death. The Court considered itself constrained by *Transaero* to include the accrued interest since it was part of the "underlying contractual obligation." Nevertheless, Judge Trager recognized that this reading of *Transaero* was likely in conflict with the case law from other circuits, which have excluded post-performance interest from the amount of controversy even when the underlying contract provided for it. *See e.g. Brainin v. Melikian*, 396 F.2d 153, 154–55 (3d Cir. 1968) (treating differently "interest imposed as a penalty for delay in payment," which is not counted for jurisdictional purposes, and "interest exacted as the agreed upon price for the hire of money," which is counted)[1]; *Regan v. Marshall*, 309 F.2d

---

1. Defendant distinguishes *Brainin* because the

Third Circuit expressed concern about a

677, 678 (1st Cir.1962) ("[I]t makes no difference whether the interest which is sought accumulated upon the principal obligation sued upon because of contract, or by common law, or by statute, or whether the interest be termed a penalty or damages, so long as it is an incident arising solely by virtue of a delay in payment."); *State Farm Mutual Auto. Ins. Co. v. Narvaez,* 149 F.3d 1269, 1271 (10th Cir.1998) (interest for delay not included in amount in controversy); *Principal Mut. Life Ins. Co. v. Juntunen,* 838 F.2d 942, 943 (7th Cir.1988) (interest on death benefit not included, despite underlying contract establishing the right to receive it).[2] *Cf. Golden v. Gorno Bros.,* 410 F.3d 879, 884–85 (6th Cir.2005) (finance charges in vehicle purchase not included in calculating $50,000 minimum under Magnuson–Moss).

*Transaero's* brief discussion of the issue did not refer to any of these authorities. Although its language concerning interest as part of the "underlying contractual obligation" is broad, I do not believe that the Circuit Court intended to lay down so open-ended a rule that indefinitely accru-

ing interest must always be added to the amount in controversy in determining whether a party has satisfied the jurisdictional threshold. I reach this conclusion for several reasons.

First, the facts of *Transaero* were unusual if not unique. Because the defendant had already paid the principal obligation, there was no dispute between the parties other than over the so-called "interest."[3] Yet to disqualify that claim from the jurisdictional floor would have meant that diverse parties in a suit to collect nearly $1 million in damages had no federal forum. The Second Circuit logically did not divine a congressional intent to exclude such an action.

I therefore believe that the essence of the Second Circuit's holding was that where an obligation labeled as "interest" has lost its character as interest, where it has, in the words of *Edwards,* "becomes really a principal obligation," then such an obligation should not be excluded from the jurisdictional calculation. This analytical

---

plaintiff waiting for interest to accrue so that it could get into federal court, whereas in the instant case, it is the defendant seeking removal. I do not think this is a material concern from either perspective. It seems to me the rare case where any litigant will allow a substantial passage of time for the primary purpose of affecting its forum selection opportunities, too rare to have any real bearing on whether a component of damages should be classified as interest for jurisdictional purposes.

**2.** Judge Trager noted that these authorities had distinguished an earlier Supreme Court case, *Brown v. Webster,* 156 U.S. 328, 330, 15 S.Ct. 377, 39 L.Ed. 440 (1895), which had included interest on a claim to recover the purchase price of a piece of real estate when the purchaser was evicted by a superior title holder. Circuit courts interpreting *Brown* have read it narrowly because the claim for both the purchase price and the interest arose at the same time, upon eviction. The *Brown*

Court held that the so called "interest" was really just the use of "an interest calculation as an instrumentality in arriving at the amount of damages." *Id.* at 329, 15 S.Ct. at 377.

**3.** The facts in *Transaero* are not entirely clear. In describing the background of the case, the Second Circuit first stated that defendant "had accumulated an outstanding principal balance of $598,115.76" and that "despite intervening payments ... totaling $648,115.76, Transaero filed suit to collect $983,696.60 for outstanding principal and interest." 24 F.3d at 459. In discussing the applicability of the Local Rule's exclusion of interest, however, the Second Circuit then stated, "Transaero applied the ... last payment to the outstanding principal debt and that, apparently, from that time on, defendant owed interest only." *Id.* at 461. In either event, it seems clear that the so-called "interest" was at least the dominant element of the claim, not a "mere accessory."

framework—looking at whether the alleged interest payment retains its character as interest or, instead, has become the financial equivalent of principal—is consistent with the Supreme Court's holding in *Edwards, supra,* upon which the Second Circuit relied.

The issue in *Edwards* was not a continually accruing interest payment; rather, the coupons had fully matured, as had the principal obligation, and required the payment of a fixed sum of money, just as the bond did itself. In equating the interest coupons to the bond itself for jurisdictional purposes, the Supreme Court noted that "[n]ot only may a suit be maintained upon an unpaid coupon, in advance of the maturity of the principal debt, but the holder of a coupon is entitled to recover interest thereon from its maturity." The Supreme Court never suggested that this additional interest—"interest ... from maturity"—should be included as part of the jurisdictional amount. It was only the matured coupon interest, fixed in amount, that was to be included in the jurisdictional calculation. *See also Brown v. Webster,* fn.1 *supra* (so-called interest claim was a "principal demand" rather than an "accessory demand"); *Bailey Employment System, Inc. v. Hahn,* 655 F.2d 473, 475 n. 1 (2d Cir.1981) ("Because interest had accrued on the instrument *prior to its maturity,* the amount in controversy satisfies the requirement of 28 U.S.C. s 1332(a).") (emphasis added).

The facts of this case similarly illustrate the distinction between interest that has become financially indistinguishable from the principal that is due and interest that is separate and apart from the principal. The notes at issue here have both forms of interest. First, the notes provide for regularly scheduled interest payments—8% per annum payable every January 2 prior to maturity—and further provide if a January 2 payment is missed, the amount due becomes part of the principal. Even plaintiff concedes that this "interest" should be included in the jurisdictional calculation. Putting aside the express provisions of the notes so stating, the financial reality is that when the annual payment is missed, it loses its character as interest. A missed January 2 payment has no distinction in financial terms from a missed principal payment. It is exactly the kind of obligation which the Supreme Court and the Second Circuit addressed, respectively, in *Edwards* and *Bailey, supra.*

In contrast, the notes here also provide for a 10% default interest rate if all amounts due (principal plus previously accrued interest) are not paid at maturity. That obligation is interest in both accounting and financial terms. It is never going to stop growing unless it is paid. Yet at the same time, it is a "mere accessory," as the Supreme Court used the term in *Edwards,* to the unpaid principal, which, unlike *Transaero,* remains the primary obligation between these parties.

In addition to relying on *Transaero,* defendant points out that that the cases from other circuits that have excluded post-maturity interest did not involve instruments with a default interest clause specifically fixing the interest rate; some did not even provide for interest at all, but interest was claimed by statute or case law based on a breach of contract. I do not regard the inclusion or absence of a default interest provision, standing alone, as a determinative factor. The plain language of the statute requires the Court to exclude "interest" from the jurisdictional calculation. It does not exclude "interest, unless provided by contract," nor "interest, to the extent recoverable by statute or judicial decision." All forms of interest are equally excluded. The only question for the

Court is: is this component of damages properly characterized as "interest?"

To determine whether a claim is fairly characterized as interest, the Court needs to start with the Supreme Court's recognition of interest as an "accessory" to principal, and then look to the totality of the circumstances of the obligation. One indicator may be that the outstanding amount is continually increasing and will cease accruing only when a principal obligation is paid. That would be indicative of "interest." Another factor would be the characterization of the component in the parties' documentation. Finally, the Court needs to consider the quantitative relationship between the principal and alleged interest; if the interest has become as large or larger than the principal, it may not be the "accessory" that Congress wanted to exclude from the jurisdictional calculation.

Of course, no one factor is controlling. *Transaero* demonstrates that even if the outstanding amount continues to grow, it may still not be "interest" for purposes of the statute when it has become indistinguishable from the original debt. Similarly, just because the parties' documentation brands an item as "interest" does not necessarily mean that it is. *Cf. Sun Oil Co. v. CIR*, 562 F.2d 258, 263 (3d Cir.1977) ("[W]e look to the economic realities ... not to the labels applied by the parties.").

In the instant case, it seems clear to me that while the annual pre-maturity interest has become part of the principal obligation, the 10% default interest has not. It is one thing to include a component that, although originally designated as interest by the parties, has lost all financially distinguishing characteristics from the principal obligation. That is *Transaero*. It is quite another to include a component that not only originates from, but continues to exist as a mere appendage resulting from the failure to timely pay a principal obligation.

Here, all of the factors point to classification of the post-default obligation as interest. It continues to accrue post-default. It is characterized as interest in the notes, and indeed, stands apart in that respect from annual, pre-default interest, which is expressly reclassified as principal when not paid. And its quantitative relationship to the principal amount originally loaned to or invested in defendant is fractional—just over $15,000 as compared to principal and annual interest of $60,000. These facts all compel the conclusion that the post-default interest is a mere accessory to the primary obligation and should be excluded under the plain language of § 1332(a).

Although the parties have some minor disputes about how to calculate the payment allegedly due here, they both agree that if the 10% post-default interest on the aggregated Meding notes is not included here, the action falls below the minimum jurisdictional amount. I therefore conclude that defendant cannot meet the jurisdictional threshold by including default interest as principal.

### CONCLUSION

For the reasons set forth above, this case is remanded to the Supreme Court of the State of New York, County of Queens. Plaintiffs' motion for recovery of attorneys' fees is denied as defendant made a good faith argument for removal.

**SO ORDERED.**