FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| DAEWOO ELECTRONICS AMERICA INC., a Florida corporation, *Plaintiff-Appellant*, | No. 14-17498 |
| | D.C. No. 3:13-cv-01247-VC |
| v. | |
| OPTA CORPORATION, a Delaware corporation registered to do business in California; T.C.L. INDUSTRIES HOLDINGS (H.K.) LIMITED, a Hong Kong corporation; TCL MULITMEDIA TECHNOLOGY HOLDING LIMITED, a Cayman Islands Company; TCL CORPORATION, a Shenzhen, China, corporation, *Defendants-Appellees*. | OPINION |

Appeal from the United States District Court
for the Northern District of California
Vince G. Chhabria, District Judge, Presiding

Argued and Submitted December 16, 2016
San Francisco, California

Filed November 27, 2017

Before:  Jay S. Bybee and N. Randy Smith, Circuit Judges,
and Leslie E. Kobayashi,[*] District Judge.

Opinion by Judge N.R. Smith;
Dissent by Judge Bybee

## SUMMARY[**]

### Claim Preclusion

The panel reversed the district court's dismissal of almost all of Daewoo Electronics America Inc.'s claims as barred by a prior judgment of the United States District Court for the District of New Jersey; and remanded for further proceedings.

Daewoo brought this diversity action to recover unpaid debt from four entities affiliated with GoVideo for GoVideo's purchase of DVD players from Daewoo. Daewoo previously filed suit in New Jersey federal court seeking to enforce a guaranty agreement, and the court ruled against Daewoo.

The panel held that the summary judgment ruling of the federal district court in New Jersey on Daewoo's prior breach of contract claim (based on the guaranty agreement) against Opta Corporation and TCL Industries Holdings Limited did not preclude Daewoo from bringing the present alter ego and

---

[*] The Honorable Leslie E. Kobayashi, United States District Judge for the District of Hawaii, sitting by designation.

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

successor liability claims against Opta and TCL Multimedia Technology Holding Limited.

The panel held that because the claims in the present action and in the prior guaranty action did not arise from the same transaction or occurrence, New Jersey's version of traditional res judicata did not apply. The panel further held that although New Jersey's "entire controversy doctrine" may have prevented Daewoo from bringing the present claims in New Jersey, this procedural joinder rule did not bar the claims from being heard in the federal district court sitting in California. The panel concluded that the district court erred in ruling that the claims in the present action were precluded under New Jersey law.

Judge Bybee dissented because the majority opinion erred in not applying New Jersey law just as New Jersey state courts would apply it. Judge Bybee would apply New Jersey's "entire controversy doctrine" which would bar Daewoo's claims, and affirm the district court's judgment.

---

## COUNSEL

Perry Clark (argued), Law Offices of Perry Clark, Palo Alto, California, for Plaintiff-Appellant.

Laurence Sandell (argued) and Reece Nienstadt, Mei & Mark LLP, Washington, D.C., for Defendants-Appellees.

**OPINION**

N.R. SMITH, Circuit Judge:

When it is necessary for a federal district court with diversity jurisdiction to determine the preclusive effect of a prior decision by a different federal district court sitting in diversity, the second court must apply preclusion principles according to the law of the initial court's state. *See Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 508–09 (2001). Under New Jersey's traditional res judicata doctrine, a claim asserting breach of a contractual guarantee of a third party's debt does not preclude later alter ego and successor liability claims to collect the debt directly from entities related to the debtor. Further, although New Jersey's procedural joinder rules may require such claims to be joined in a single action, New Jersey law declines to impose these rules on other courts. *See Paramount Aviation Corp. v. Agusta*, 178 F.3d 132, 142 (3d Cir. 1999); *Mortgagelinq Corp. v. Commonwealth Land Title Ins.*, 662 A.2d 536, 537, 540–42 (N.J. 1995). Because the district court failed to apply New Jersey law correctly, we reverse.

## I.  BACKGROUND

Underlying this case are the unpaid debts of GoVideo (a non-party) for the purchase of DVD players from Plaintiff-Appellant Daewoo Electronics America Inc. (Daewoo). Daewoo brought the present action to recover this debt from four entities affiliated with GoVideo: TCL Corporation (TCLC), TCL Industries Holdings Limited (TCLI), TCL

Multimedia Technology Holding Limited (TCLM), and Opta Corporation (Opta).[1]

GoVideo operated a consumer electronics business in which it owned patents on electronics technology, bought DVD players from manufacturers (made pursuant to GoVideo's patents), and sold those players to third-party retailers. From October 2003 through April 2005, Daewoo manufactured DVD players that it sold to GoVideo on credit. Shortly after this arrangement began, (on December 4, 2003) Daewoo, TCLI, and Opta entered into a guaranty agreement.[2] Under that agreement, TCLI and Opta guaranteed the payment of obligations to Daewoo up to $5 million for the products Daewoo shipped to GoVideo. The agreement provided that it was to "remain in force for the 12 month period from the date of [its] execution." The agreement also specified that it was governed by New Jersey law.

---

[1] Although Daewoo named all four entities as defendants, only TCLM and Opta are proper parties to this appeal. Daewoo voluntarily dismissed TCLC prior to appeal. The district court also dismissed all claims against TCLI for lack of personal jurisdiction. Daewoo did not contest this ruling on appeal. Therefore, the issue is waived. *Smith v. Marsh*, 194 F.3d 1045, 1052 (9th Cir. 1999).

Concerning Defendants' relationships to GoVideo, the record indicates that ownership of GoVideo changed substantially during the course of the parties' dealings. However, as alleged in the complaint, TCLC wholly owned TCLI. TCLI owned 55% of TCLM and 89% of Lotus International Holdings (Lotus). TCLI and Lotus owned, respectively, 19% and 32% of Opta. And Opta wholly owned Opta Systems LLC, which formerly did business as GoVideo.

[2] Opta was formerly "Lotus Pacific Inc." and executed the guaranty under that name.

During 2004 and 2005, GoVideo had substantial operating losses. As a result, beginning in late December 2004, GoVideo stopped paying for the DVD players it was receiving from Daewoo. As of June 2005, GoVideo owed Daewoo $7,775,670.98. In November 2005, GoVideo brought suit in the United States District Court for the District of New Jersey against Daewoo for breach of contract and other claims based on allegations that Daewoo manufactured defective products for GoVideo. Daewoo asserted counterclaims to collect the unpaid debts GoVideo owed for DVD players. In April 2007, after GoVideo had abandoned its claims, the district court entered default judgment on the counterclaims, awarding Daewoo $8,385,168.84 (the amount of the debt, plus interest).

Unable to collect from GoVideo on this judgment, Daewoo filed suit in May 2008 against TCLI and Opta, in the United States District Court for the District of New Jersey, seeking to enforce the guaranty agreement. In August 2010, the district court granted Defendants' motion for summary judgment in the guaranty action. Applying New Jersey contract law, the court found that the effective date of the guaranty was December 4, 2003; that such date was "clear on [the] face" of the agreement; and that the guaranty expired by its terms on December 3, 2004, twelve months from that date. Because the default judgment against GoVideo arose from debt incurred starting on December 23, 2004—after the guaranty expired—the district court held that TCLI and Opta never had an obligation to pay this debt under the guaranty.

In March 2013, Daewoo brought the present suit against Opta, TCLM, TCLC, and TCLI in the United States District Court for the Northern District of California, asserting California state law claims for (1) actual fraudulent transfer,

(2) constructive fraudulent transfer, (3) alter ego liability, and (4) successor liability. Defendants moved to dismiss based on the res judicata effect of the guaranty action. Judge White from the Northern District of California rejected the res judicata argument, holding that the actions were not sufficiently related so as to arise from the same transaction or occurrence. Instead, these California claims for relief relied on entirely different facts. Daewoo later voluntarily dismissed its claims for fraudulent transfer.

The case was reassigned to Judge Chhabria in April 2014. Shortly thereafter, Judge Chhabria sua sponte ordered the parties to brief "whether this lawsuit is barred in whole or in part under the doctrine of res judicata," based on the summary judgment in the guaranty action. Defendants then moved, under Federal Rule of Civil Procedure 12(c), for judgment on the pleadings based on res judicata. In ruling on the motion, the district court found that most of the facts on which Daewoo bases its present claims were available to Daewoo during the period that the guaranty action was pending. Thus, the court held that, because Daewoo could have asserted the present claims at the same time it brought the prior action, Daewoo was barred from bringing those claims in the present action. Daewoo now appeals.

## II.  STANDARD OF REVIEW

We review de novo the district court's ruling on a motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c). *Lyon v. Chase Bank USA, N.A.*, 656 F.3d 877, 883 (9th Cir. 2011). Dismissal under Rule 12(c) is warranted when, taking the allegations in the complaint as true, the moving party is entitled to judgment as a matter of law. *Id*. We also review "questions of choice of law" de novo,

*Paulsen v. CNF Inc.*, 559 F.3d 1061, 1072 (9th Cir. 2009), but review for clear error the "factual findings underlying [the] choice of law determination," *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1187 (9th Cir. 2001).

## III.  DISCUSSION

In short, the summary judgment ruling of the federal district court in New Jersey on Daewoo's prior breach of contract claim (based on the guaranty agreement) against Opta and TCLI does not preclude Daewoo from bringing the present alter ego and successor liability claims against Opta and TCLM.[3]

*Semtek International Inc. v. Lockheed Martin Corp.*, 531 U.S. 497 (2001), provides the framework for our analysis.[4] Under *Semtek*, "federal common law governs the claim-preclusive effect of a dismissal by a federal court sitting in diversity." *Id.* at 508. However, in these circumstances, federal common law requires that we determine the preclusive effect of the prior decision by reference to the law

---

[3] For purposes of our discussion, we refer to the first forum to address a particular case as "F1." The second forum, tasked with determining the preclusive effect of an F1 judgment, we refer to as "F2."

[4] The present case considers the effect of a federal district court judgment rendered by a court sitting with diversity jurisdiction on a subsequent adjudication in a different federal district court also sitting in diversity. Although *Semtek* considered the effect of a federal district court diversity-jurisdiction judgment on a subsequent adjudication in a state court, 531 U.S. at 499–500, we have since applied *Semtek*'s holding to cases where the second court was also a federal diversity court, *see Taco Bell Corp. v. TBWA Chiat/Day Inc.*, 552 F.3d 1137, 1144 (9th Cir. 2009); *Giles v. Gen. Motors Acceptance Corp.*, 494 F.3d 865, 884–85 (9th Cir. 2007).

of the state where the rendering federal diversity court sits.[5] *Id.* Because we must determine the preclusive effect of the judgment in the guaranty action, rendered by the United States District Court for the District of New Jersey sitting with diversity jurisdiction, *Semtek* mandates that we turn to New Jersey state preclusion law.

The parties do not dispute that we begin with New Jersey law for the preclusion question; they disagree as to how that law operates. Their arguments concern two state law doctrines: (1) New Jersey's version of traditional res judicata, and (2) New Jersey's "entire controversy doctrine." We address the application of each doctrine in turn.[6]

---

[5] However, the state law is not incorporated in cases where "the state law is incompatible with federal interests." *Semtek*, 531 U.S. at 509.

[6] Daewoo argues that Defendants waived their right to raise a preclusion defense in the present action, because they failed to plead res judicata in the prior guaranty action (based on the preclusive effect of Daewoo's default judgment against GoVideo). Daewoo waived this argument by failing to raise it in its opening brief. *Martinez-Serrano v. I.N.S.*, 94 F.3d 1256, 1259 (9th Cir. 1996) ("[A]ppellants cannot raise a new issue for the first time in their reply briefs." (citation omitted)); *see also Norwood v. Vance*, 591 F.3d 1062, 1068 (9th Cir. 2010) (collecting cases demonstrating that a party may waive a waiver argument). In addition, it was the district court, not Defendants, who raised the res judicata issue. The district court may raise res judicata even where it would otherwise have been waived, *see Plaut v. Spendthrift Farm, Inc.*, 514 U.S. 211, 231 (1995) ("[T]rial courts may in appropriate cases raise the res judicata bar on their own motion."); *see also* 18 James Wm. Moore et al., *Moore's Federal Practice* § 131.51 (3d ed. 2017), so long as the parties have the opportunity to sufficiently address the issue, *see McClain v. Apodaca*, 793 F.2d 1031, 1033 (9th Cir. 1986).

*A.   Res Judicata*

Because there is not substantial overlap of the facts material to proving, first, the breach of contract claim in the prior guaranty action and, second, the alter ego and successor liability claims in the present action, the two actions do not grow from the same transaction or occurrence, and res judicata does not apply. For res judicata to apply, "[(1)] the judgment relied upon must be valid, final and on the merits; [(2)] the parties in the two actions must be either identical or in privity with one another; and [(3)] the claims must grow out of the same transaction or occurrence." *Olds v. Donnelly*, 677 A.2d 238, 243 (N.J. Super. Ct. App. Div. 1996), *aff'd*, 696 A.2d 633 (N.J. 1997). Only the third element is genuinely in dispute.

Therefore, we turn to whether Daewoo's alter ego and successor liability claims grow out of the same transaction or occurrence as the claim on the guaranty contract. To answer that question, we must consider four factors:

> (1) whether the acts complained of and the demand for relief are the same (that is, whether the wrong for which redress is sought is the same in both actions); (2) whether the theory of recovery is the same; (3) whether the witnesses and documents necessary at trial are the same (that is, whether the same evidence necessary to maintain the second action would have been sufficient to support the first); and (4) whether the *material* facts alleged are the same.

*Culver v. Ins. Co. of N. Am.*, 559 A.2d 400, 405 (N.J. 1989) (internal citations omitted) (quoting *United States v. Athlone Indus., Inc.*, 746 F.2d 977, 984 (3d Cir. 1984)). "[T]he focal points of [the] analysis are whether the acts complained of were the same, whether the material facts alleged in each suit were the same and whether the witnesses and documentation required to prove such allegations were the same." *Athlone*, 746 F.2d at 984.[7]

With respect to the first factor, Defendants' acts (of which Daewoo complained and for which Daewoo demanded corresponding relief) differed in each action. Although Daewoo's claims in both actions could have had the *effect* of satisfying part of the default judgment against GoVideo (as both district court judges in the present action acknowledged), the underlying bases giving Daewoo a right to bring each suit—the wrongs for which Daewoo sought redress—did not overlap.

As Judge White observed, the prior suit was an action for "a breach of a guaranty contract." Daewoo's complaint in the prior action alleged that Defendants became liable to Daewoo under the contract for $5 million, that Daewoo demanded payment from Defendants, and that Defendants refused to pay. It was the breach of the guaranty—Defendants' refusal to fulfill their contractual obligation to pay $5 million—that

---

[7] New Jersey's res judicata standard is very similar to its federal counterpart applied by the Third Circuit. *See In re Mullarkey*, 536 F.3d 215, 225 (3d Cir. 2008) ("Both New Jersey and federal law apply res judicata or claim preclusion when [the same] three circumstances are present . . . ."); *Interfaith Cmty. Org. Inc. v. PPG Indus., Inc.*, 702 F. Supp. 2d 295, 303 (D.N.J. 2010) ("New Jersey and federal res judicata have [the] same elements." (citing *Watkins v. Resorts Int'l Hotel & Casino, Inc.*, 591 A.2d 592, 599 (N.J. 1991))).

was the wrong for which Daewoo sought relief. Although proof of this claim would require showing that GoVideo was in debt to Daewoo, the purpose of suing in the guaranty action would not have been to fulfill GoVideo's obligation to pay its debt. Instead, the suit would fulfill Defendants' independent contractual obligation under an agreement to which GoVideo was not a party. Conversely, Daewoo seeks redress in the present action for an obligation to pay a $7.75 million debt incurred by GoVideo that had nothing to do with the guaranty contract. Daewoo seeks to hold Defendants directly liable for GoVideo's unpaid debt, rather than for Defendants' independent obligation.

The relief available for each cause of action further evidences the difference in the underlying wrongs. Defendants acknowledge that the amount of damages available under the two actions was substantially different. In the prior action, Daewoo could have recovered no more than Defendants' independent $5 million obligation under the guaranty. However, under the theories asserted in the present action, Daewoo could recover $7.75 million, because Defendants would be held directly liable for the full amount of GoVideo's debts. *See Wady v. Provident Life & Accident Ins. Co. of Am.*, 216 F. Supp. 2d 1060, 1066 (C.D. Cal. 2002). Because Daewoo brought each action to seek redress for different underlying conduct, and because the recovery available in each action was substantially different, this factor weighs against finding that the claims grew from the same transaction or occurrence.

Second, the parties and both of the district court judges have acknowledged that the present action involves theories of recovery that are legally distinct from those asserted in the prior action. The guaranty action concerned liability under an

express contract executed by the parties to the litigation and governed by New Jersey law. The present action seeks to hold Defendants directly liable for a third-party's debt under California actions of alter ego and successor liability, where Defendants would otherwise have no independent basis for that debt. While this factor does not carry as much weight as others in the analysis, *see Athlone*, 746 F.2d at 984, it nonetheless supports the conclusion that claims in the separate actions did not grow from a common transaction or occurrence.

The third and fourth factors are intertwined and both weigh in Daewoo's favor, because there is not significant overlap between the material facts or the necessary evidence in each action. Daewoo argues that the claims asserted in the separate actions involve substantially different facts and evidence because the issues in the guaranty action concerned only formation and interpretation of the guaranty contract, which are irrelevant to the claims of alter ego and successor liability. Instead, Daewoo argues, the present action "focuses on the conduct of Defendants-Appellees in stripping GoVideo of its assets," which occurred well after formation of the guaranty. Daewoo further contends that (although Opta was involved in both actions) none of the facts or evidence in the guaranty action would have related to TCLM, because TCLM was not a party to that case or to the guaranty agreement. Defendants argue that Daewoo demonstrated the substantial overlap between the two lawsuits by alleging several of the same facts in both actions. However, Defendants fail to explain why any of these common facts (and their supporting evidence) were material to the guaranty action. Judge Chhabria's analysis suffers the same flaw. As Judge White found, while some of the contextual background facts may overlap, "Daewoo's alter ego and successor liability claims

nonetheless do not directly relate in substance to the guaranty contract," and they rely on an entirely different set of facts. In their analyses of res judicata, neither the district court nor the parties discuss what specifically must be proved for the various claims. Examining the required proof makes it clear that the two actions here would not involve significantly overlapping facts and evidence.

New Jersey contract law requires a plaintiff to show that (1) the parties formed a contract, (2) the plaintiff performed under the terms of the contract, (3) the defendant breached, and (4) the breach caused a loss to the plaintiff. *Globe Motor Co. v. Igdalev*, 139 A.3d 57, 64 (N.J. 2016).

The theory of "alter ego," under California law, refers to situations where the "owner of a corporation will be held liable for the actions of the corporation." *Wady*, 216 F. Supp. 2d at 1066 (quoting *Roman Catholic Archbishop of S.F. v. Superior Court*, 93 Cal. Rptr. 338, 341 (Cal. Ct. App. 1971)). Two elements are required: "(1) that there be such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist[,] and (2) that, if the acts are treated as those of the corporation alone, an inequitable result will follow." *Id.* (quoting *Mesler v. Bragg Mgmt. Co.*, 702 P.2d 601, 606 (Cal. 1985)). "California courts emphasize that the alter ego determination is very fact specific." *Smith v. Simmons*, 638 F. Supp. 2d 1180, 1191 (E.D. Cal. 2009), *aff'd*, 409 F. App'x 88 (9th Cir. 2010).

In considering whether there is sufficient unity of interest and ownership, relevant factors include whether there was

> inadequate capitalization, commingling of funds and other assets, holding out by one

> entity that it is liable for the debts of the other, identical equitable ownership, use of the same offices and employees, use of one as a mere conduit for the affairs of the other, disregard of corporate formalities, lack of segregation of corporate records, and identical directors and officers.

*Id.* (citing *VirtualMagic Asia, Inc. v. Fil-Cartoons, Inc.*, 121 Cal. Rptr. 2d 1, 13 (Cal. Ct. App. 2002)). Finding an "inequitable result" under the second element of alter ego liability "generally require[s] some evidence of bad faith conduct on the part of defendants." *Id.* at 1192.

Under a California successor liability claim, a corporation acquiring substantially all the assets of another corporation may be liable for the debts of the terminated corporation where "(1) the purchaser expressly or impliedly agrees to such assumption, (2) the transaction amounts to a consolidation or merger of the two corporations, (3) the purchasing corporation is merely a continuation of the selling corporation, or (4) the transaction is entered into fraudulently to escape liability for debts." *McClellan v. Northridge Park Townhome Owners Ass'n, Inc.*, 107 Cal. Rptr. 2d 702, 707 (Cal. Ct. App. 2001) (emphasis omitted) (quoting *Ortiz v. S. Bend Lathe*, 120 Cal. Rptr. 556, 558 (Cal. Ct. App. 1975)).

In analyzing the third and fourth factors to determine whether claims grew out of the same transaction or occurrence, we consider "the *material* facts" and the evidence necessary to prove them. *See Culver*, 559 A.2d at 405 (quoting *Athlone*, 746 F.2d at 984). The existence of many common facts between the two actions does not necessarily speak to whether the common facts are material to proving

either claim. *Athlone*, 746 F.2d at 985–86. "[T]he overlap of irrelevant facts and probably even tangential facts constitutes nothing more than surplusage." *Id.* at 986. As an initial point, Daewoo is correct that (because TCLI was dismissed from the present action for lack of personal jurisdiction) Opta is the only defendant common to both actions, which tends to reduce the potential evidentiary overlap. Furthermore, because, under the guaranty action, neither party seriously disputed the valid formation of the guaranty agreement, that Daewoo performed under the agreement, or that Daewoo was harmed by Defendants' non-payment, the only disputed question was that of Defendants' breach. With respect to this question, the district court explained that the "central issue" was "the date that the guaranty became effective." Because the district court found that this issue was controlled by the unambiguous face of the contract, essentially no evidence at all was necessary to resolve the contract claim. Yet, even if every element were contested, the material facts and supporting evidence would revolve exclusively around the contract: the parties who formed it, when it was formed, the intended interpretation of the terms, whether Daewoo performed its obligations under the guaranty agreement, whether an obligation for Defendants to pay arose under the terms of the contract, whether Daewoo demanded payment, whether Defendants refused to pay, whether Daewoo suffered damages, and the amount of Daewoo's damages.

Comparing this required proof to that necessary for the claims in the present action, it is clear there would be very little overlap. Because the guaranty contract forms an obligation for Defendants to pay that is separate from GoVideo's direct liability for its debt, the guaranty action would not require any proof concerning the entities' relationships or an inequitable result, as in the alter ego claim.

Likewise, the guaranty action would not have required proof of the circumstances necessary to establish successor liability. The one area of potential overlap is that both actions would require proof that GoVideo had a debt to Daewoo. However, Daewoo had a default judgment establishing GoVideo's debt for $7.75 million well before it filed either action. Therefore, the only evidence required to establish the existence of the debt would be the default judgment. Because the existence of the debt is essentially uncontested, the burden imposed (and the judicial resources expended) by introducing the default judgment in each action would be minimal. Although there are some allegations common to the complaints in both actions, these allegations concern facts immaterial to the guaranty action. In light of the minimal overlap between the *material* facts and evidence necessary to prove the claims in each action, the third and fourth factors weigh against finding that the actions grew from the same transaction or occurrence.

Because the two actions asserted distinct theories of liability to seek redress for different harms, and because the facts and evidence material to each action did not significantly overlap, the two actions did not grow from a common transaction or occurrence. Therefore, the judgment from the guaranty action does not preclude the claims in the present action under the New Jersey doctrine of res judicata.

During a July 2014 hearing, "Daewoo's counsel stated on the record that Daewoo could have brought the claims at issue in this case during the [guaranty action] but chose not to do so." Defendants and Judge Chhabria place great weight on this point, seeming to argue that it should dispositively preclude Daewoo from maintaining the present action. However, this argument reflects a misunderstanding of the test for res judicata. While res judicata *permits* claims to be

barred where they could have been raised in the prior action but were not, the requirement remains that the un-alleged claims must be so closely related to those claims on which the prior judgment was rendered that they are considered to grow from the same transaction or occurrence. The required elements of the res judicata doctrine do not cease to apply simply because a claim was not alleged when it could have been. Even if Daewoo could have brought the present claims in the prior action, it was not required to do so, because the present claims did not grow from the same transaction or occurrence as did the guaranty claim.

## B. *Entire Controversy Doctrine*

The present claims are not precluded by New Jersey's entire controversy doctrine.

In *Semtek*, the Supreme Court outlined that we must look to state law to resolve preclusion issues under the present circumstances. The Court acknowledged the possibility that a state's law could have two preclusion rules that applied differently (under the same set of facts) depending on the jurisdiction in which the F2 action was brought. *See* 531 U.S. at 503–04 (recognizing a hypothetical situation where "California law left [a party] free to sue on [a] claim in Maryland even after the [claim was precluded in California because the] California statute of limitations had expired"); *Chavez v. Dole Food Co.*, 836 F.3d 205, 225–28 (3d Cir. 2016) (en banc) (explaining that *Semtek* alludes to the possibility of state preclusion law applying differently depending on the F2 jurisdiction). And giving effect to a state's law of preclusion necessarily includes applying any exceptions that, under the state's law, prevent application of certain preclusion principles. *See Cummins, Inc. v. TAS*

*Distrib. Co.*, 676 F. Supp. 2d 701, 711–13 (C.D. Ill. 2009), *aff'd*, 700 F.3d 1329 (Fed. Cir. 2012).

The New Jersey court system has a "long-held preference that related claims and matters arising among related parties be adjudicated together rather than in separate, successive, fragmented, or piecemeal litigation." *Kent Motor Cars, Inc. v. Reynolds & Reynolds, Co.*, 25 A.3d 1027, 1036 (N.J. 2011). New Jersey gives effect to this preference through court rules reflecting the state's fairly strict approach to joinder of claims and parties. For example, New Jersey Rule of Court 4:30A, titled "Entire Controversy Doctrine," provides that the "[n]on-joinder of claims required to be joined by the entire controversy doctrine shall result in the preclusion of the omitted claims to the extent required by the entire controversy doctrine . . . ." *See also Ricketti v. Barry*, 775 F.3d 611, 614 n.2 (3d Cir. 2015) ("[L]itigants invoking claim joinder as a basis for preclusion must turn to [New Jersey Court] Rule 4:30A . . . ."). However, these court "rules by definition apply only in the courts of New Jersey." *NJSR Surgical Ctr., L.L.C. v. Horizon Blue Cross Blue Shield of N.J., Inc.*, 979 F. Supp. 2d 513, 518 (D.N.J. 2013); *id.* at 519 n.3 (further explaining that the New Jersey Court Rules are "confined to the state courts"); N.J. Ct. R. 4:1 (providing that the rules in Part IV of the New Jersey Rules of Court—which include the entire controversy doctrine—only govern practice and procedure in the state courts of New Jersey).

These joinder rules are distinct from traditional preclusion rules like res judicata. Unlike res judicata, the primary purpose of the entire controversy doctrine is not to enforce an adjudication that has already taken place. *See Fioriglio v. City of Atl. City*, 963 F. Supp. 415, 420 n.1 (D.N.J. 1997). Instead, "New Jersey's main justification for the doctrine[ is] its

interest in preserving its judicial resources," which the state attempts to protect by preventing fragmentation of litigation at the outset. *Paramount Aviation Corp. v. Agusta*, 178 F.3d 132, 142 (3d Cir. 1999); *see also Sutton v. Sutton*, 71 F. Supp. 2d 383, 390 (D.N.J. 1999) ("[The doctrine] seeks to promote judicial economy and efficiency by avoiding fragmented, multiple and duplicative litigation." (citation and internal quotation marks omitted)), *aff'd*, 216 F.3d 1077 (3d Cir. 2000); *Kent Motor Cars*, 25 A.3d at 1036 ("Underlying the Entire Controversy Doctrine are the twin goals of ensuring fairness to parties and achieving economy of judicial resources."); *K-Land Corp. No. 28 v. Landis Sewerage Auth.*, 800 A.2d 861, 871 (N.J. 2002) ("[T]he entire controversy doctrine [is] designed to conserve judicial resources.").

For example, in *Mortgagelinq Corp. v. Commonwealth Land Title Insurance*, the New Jersey Supreme Court considered whether the state court (sitting as F2) was permitted to apply the state's own entire controversy doctrine to preclude claims that could have been (but were not) brought in a prior action in Pennsylvania federal court (F1). 662 A.2d 536, 540 (N.J. 1995). In concluding that New Jersey could apply the doctrine to close its courthouse doors, the court did not reason that it was protecting the finality of any prior adjudications, as would have been the case with traditional preclusion rules such as res judicata. Instead the court relied primarily on its interest in "[j]udicial economy and efficiency—the avoidance of waste and delay." *Id.* at 540–41 (quoting *Cogdell v. Hosp. Ctr. at Orange*, 560 A.2d 1169, 1177 (N.J. 1989)). As *Mortgagelinq* demonstrates, New Jersey applies the entire controversy doctrine as a procedural housekeeping tool that closes the courthouse doors to prevent a party from litigating a claim in New Jersey courts, based on

a specific policy choice that New Jersey made regarding the priority of its judicial resources.**[8]**

However, this goal of preserving New Jersey's judicial resources does not benefit from a non-New Jersey court (sitting as F2) closing its courthouse doors. Accordingly, New Jersey does "not export [its] entire controversy doctrine to other jurisdictions." *Id.* at 537. Rather, given the nature and principal goal of the doctrine, the New Jersey Supreme Court has indicated that—even if the entire controversy doctrine would have precluded an F2 decision in New Jersey—the entire controversy doctrine would not preclude a different jurisdiction sitting as F2 (whose own procedural rules allow the claim) from entertaining the case, because New Jersey law does not impose on other jurisdictions its procedural joinder requirements or the preclusive effect of those requirements. *See id.* at 537, 540–42; *see also Paramount*, 178 F.3d at 140–42 (interpreting *Mortgagelinq* broadly as "attempt[ing] to cabin the effect of the [entire controversy] doctrine outside of New Jersey courts," as "herald[ing] an awareness of the doctrine's limits when interjurisdictional problems were involved," and as "ensur[ing] that the doctrine will not have untoward extraterritorial effects"); *Archbrook*

---

**[8]** New Jersey courts and their federal counterparts cannot claim to be entirely consistent when it comes to treatment of the entire controversy doctrine. *Mortgagelinq*, itself, acknowledges that "the entire controversy doctrine is hardly one of either uniform application or universal acceptance." 662 A.2d at 541. However, our duty in applying New Jersey law is to "apply the law as we believe the [New Jersey] Supreme Court would apply it." *Astaire v. Best Film & Video Corp.*, 116 F.3d 1297, 1300 (9th Cir. 1997), *amended*, 136 F.3d 1208 (9th Cir. 1998). And, while there are cases with language suggesting other interpretations of the entire controversy doctrine, *Mortgagelinq* provides the most on-point authority for how New Jersey applies the doctrine in the extrajurisdictional context.

*Laguna, LLC v. Marsh*, 997 A.2d 1035, 1042 (N.J. Super. Ct. App. Div. 2010) (holding that entire controversy doctrine (1) precluded, in a F2 New Jersey state action, claims that could have been brought in a prior F1 Georgia action but (2) did not limit the plaintiff's ability to commence an F2 action in a different jurisdiction).

The dissent argues that the entire controversy doctrine's exception should not be applied in this case. This is incorrect for three reasons. First, the dissent incorrectly applies New Jersey law. Although the dissent argues that "[t]he majority nevertheless refuses to apply the entire controversy doctrine," it is the dissent which truly implements only half of the doctrine. As the dissent correctly notes, we must "implement New Jersey preclusion law just as a New Jersey state court would." Indeed, this is the central holding in *Semtek. Semtek*, 531 U.S. at 508. Contrary to the dissent's conclusion, this includes applying any exceptions contained in the doctrine. We do not get to pick and choose which parts to apply. The entire controversy doctrine is not merely a bar against bringing claims that could have been brought in a prior proceeding, but it also includes the exception that New Jersey *does not impose the doctrine outside its state courts*. *Mortgagelinq*, 662 A.2d at 538 ("Just as we do not seek to export our procedural requirements of party joinder, we do not seek to export any preclusive effect to our rules of party joinder."). However, the dissent would have this court implement the doctrine *as if it were the New Jersey state court*, not simply applying the New Jersey state court's law as the Ninth Circuit. This means the exclusion applies and we cannot impose the entire controversy doctrine.

Second, the dissent incorrectly reads the import of this doctrine. New Jersey's ability to treat this housekeeping

mechanism as preclusive in its own courts, but not in other courts, is supported by analogy to other mechanisms that reach a comparable result, such as statutes of limitation or forum non coveniens. *Semtek* foresaw and acknowledged situations where state law statute of limitations would be preclusive in one state, but not another. *Semtek*, 531 U.S. at 503–04. The entire controversy doctrine is no different.

Finally, assuming the dissent is correct that failing to apply the entire controversy doctrine as a bar in this case would lead to forum shopping and other problems, Daewoo's claims would still not be barred under *Semtek*.  Where applying the state law would be "incompatible with federal interests," "[t]his federal reference to state law will not obtain." *Id.* at 509. Forum shopping, as raised by the dissent, would certainly implicate "federal interests." *Id.* at 508–09. However, instead of modifying the entire controversy doctrine so as to apply it without its inherent exception, *Semtek*'s proffered solution binds the actions of this court. In that situation, we simply do not apply New Jersey law, but rather, federal res judicata law, which is substantively the same as New Jersey's res judicata law. *See supra* note 7. Thus, this court would still reach the same result: Daewoo's claims are not barred.

In sum, New Jersey law does not require extrajurisdictional application of its entire controversy doctrine. This approach complies with the Supreme Court's decision in *Semtek*, which recognized that a state may have preclusion rules that bar certain claims within that state while permitting the same claims elsewhere. Therefore, following *Semtek* to give full effect to the preclusion laws of New Jersey, we must decline to apply the entire controversy doctrine to this case.

## IV.  CONCLUSION

Because the claims in the present action and in the guaranty action did not arise from the same transaction or occurrence, New Jersey's version of traditional res judicata does not apply. And, although the entire controversy doctrine may have prevented Daewoo from bringing the present claims in New Jersey, this procedural joinder rule does not bar the claims from being heard in the federal district court sitting in California. Thus, the district court erred in ruling that the claims in the present action were precluded under New Jersey law.

**REVERSED and REMANDED for further proceedings**.

BYBEE, Circuit Judge, dissenting:

This case presents a complex issue of interjurisdictional preclusion, but it can be solved easily if one adheres to first principles.  The preclusive effect of a prior judgment in a federal diversity action is governed by the law of the state in which the rendering court sits. *Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 506–08 (2001).  Here, Daewoo received a prior judgment in a federal diversity action filed in the District of New Jersey.  The preclusive effect of that prior judgment is therefore governed by New Jersey state law.

There are two twists.  First, New Jersey has an unusually robust preclusion rule called the "entire controversy doctrine," and applying that doctrine here would bar Daewoo's claims.  Second, the New Jersey Supreme Court

has said that only its own courts, not federal or other state courts, need apply the entire controversy doctrine. *Mortgagelinq Corp. v. Commonwealth Land Title Ins. Co.*, 662 A.2d 536, 542 (N.J. 1995). None of this, however, alters our obligation to implement New Jersey preclusion law just as a New Jersey state court would. I would therefore apply the entire controversy doctrine and affirm the judgment.

The majority nevertheless refuses to apply the entire controversy doctrine, citing New Jersey's limitation of the doctrine to its own courts. Maj. Op. at 19–23. According to the majority, we cannot apply the doctrine "as if [we] were the New Jersey state court," but rather must apply the "state court's law as the Ninth Circuit." *Id.* at 22 (emphasis omitted). Simply put, this is an aberration. We are required to apply *the same law New Jersey state courts would apply. See Semtek*, 531 U.S. at 508. We do not get to apply *the law New Jersey state courts would apply if they were federal courts*. It is not up to New Jersey to "determin[e] the extraterritorial effect of [its] own laws and judgments," and we should have declined its invitation to violate fundamental principles of interjurisdictional preclusion. *Thomas v. Washington Gas Light Co.*, 448 U.S. 261, 272 (1980) (plurality opinion).

I respectfully dissent.

## I

This dispute stems from a sour business deal between Daewoo and GoVideo. Daewoo obtained a default judgment against GoVideo for some $7.78 million. Unable to collect from GoVideo itself, Daewoo sued GoVideo's parent companies and other affiliates—entities the majority calls

TCLC, TCLI, TCLM, and Opta.  Maj. Op. at 4–5.
Specifically, Daewoo filed two lawsuits, each asserting a
different theory of liability regarding the affiliate companies'
responsibility to cover GoVideo's debt.

First, Daewoo brought a diversity action against TCLI
and Opta in the District of New Jersey, alleging that those
companies had guaranteed repayment of GoVideo's debt in
a written agreement.  The district court rejected Daewoo's
theory and entered summary judgment against it.  Second,
Daewoo filed this diversity action in the Northern District of
California against all four entities affiliated with GoVideo
(although only TCLM and Opta remain Defendants).
Daewoo alleged, *inter alia*, that Defendants were alter egos
of GoVideo and liable for its debts.  The district court
dismissed almost all of Daewoo's claims as barred by the
prior judgment.  Daewoo appealed.

## II

The majority and I agree that the preclusive effect of the
prior judgment is governed by New Jersey state law.  *See*
Maj. Op. at 18.  We disagree, however, about how to apply
that law here.  What complicates this case is the unique
structure of New Jersey's preclusion rules, which encompass
both a traditional res judicata doctrine and the entire
controversy doctrine.

New Jersey's res judicata doctrine "requires substantially
similar or identical causes of action and issues, parties, and
relief sought."  *Wadeer v. New Jersey Mfrs. Ins.* Co.,
110 A.3d 19, 28 (N.J. 2015) (citation omitted); *see also* Maj.
Op. at 10–11 & n.7.  The state's entire controversy doctrine
is broader. *Melikian v. Corradetti*, 791 F.2d 274, 279 (3d Cir.

1986). Unlike res judicata, the entire controversy doctrine does not require common legal issues or requested relief but only that "the claims against the different parties arise from related facts or the same transaction or series of transactions." *Wadeer*, 110 A.3d at 27 (citation omitted). It is the "core set of facts" common to two actions that triggers the entire controversy bar. *Id.*; *see also Mystic Isle Dev. Corp. v. Perskie & Nehmad*, 662 A.2d 523, 529 (N.J. 1995) ("[I]t is the factual circumstances giving rise to the controversy itself . . . that triggers the requirement of [claims] joinder to create a cohesive and complete litigation." (citation omitted)); *Oliver v. Ambrose*, 705 A.2d 742, 747 (N.J. 1998) ("The entire controversy doctrine encompasses 'virtually all causes, claims, and defenses relating to a controversy.'" (citation omitted)).[1]

---

[1] The doctrine is currently enforced through New Jersey Court Rule 4:30A:

> Non-joinder of claims required to be joined by the entire controversy doctrine shall result in the preclusion of the omitted claims to the extent required by the entire controversy doctrine, except as otherwise provided by R. 4:64-5 (foreclosure actions) and R. 4:67-4(a) (leave required for counterclaims or cross-claims in summary actions). Claims of bad faith, which are asserted against an insurer after an underlying uninsured motorist/underinsured motorist claim is resolved in a Superior Court action, are not precluded by the entire controversy doctrine.

*See also* N.J. Ct. R. 4:5-1(b)(2) (imposing a duty for parties to disclose "the names of any non-party who should be joined in the action"). New Jersey courts have not always clearly articulated the distinction between res judicata and the entire controversy doctrine, and some have even equated the two. *See, e.g.*, *Long v. Lewis*, 723 A.2d 1238, 1243 (N.J. Super. Ct. App. Div. 1999) ("The claim preclusion aspect of the entire

Applying the correct preclusion doctrine is of critical importance in this case. Under New Jersey's res judicata doctrine, there is a strong argument that the prior judgment does not bar Daewoo's claims here. *See* Maj. Op. at 10–18. As the majority notes, the two actions seek slightly different relief (Daewoo hopes to recover more here), and involve different theories of recovery, allegations, and potential evidence. *See id.* at 11–14. The majority and Daewoo appear to agree, however, that this action would not survive under the entire controversy doctrine. Both actions arise from the same core set of facts, which is all that is necessary for the entire controversy doctrine to apply. *See Wadeer*, 110 A.3d at 27.

III

According to the majority, we can follow New Jersey law and yet not apply the entire controversy doctrine because New Jersey has limited the doctrine to its own courts. This reasoning is both an affront to controlling federal common law and an open invitation to forum shopping. To show precisely where the majority goes astray, I first discuss general principles of interjurisdictional preclusion and then explain why the New Jersey Supreme Court's decision in *Mortgagelinq* cannot keep us from applying the entire controversy doctrine here. Throughout, I refer to the first court to render a judgment as Forum 1 ("F1") and the second court considering whether to give preclusive effect to that judgment as Forum 2 ("F2").

_____

controversy doctrine is essentially res judicata by another name."). As the most recent New Jersey Supreme Court decision on the subject indicates, however, the doctrines are indeed distinct. *See Wadeer*, 110 A.3d at 27–28.

A

Interjurisdictional preclusion rules are least complicated when F1 is a state court.  When a state court enters judgment, the Full Faith and Credit Clause of the Constitution, implemented through the Full Faith and Credit Act, requires every subsequent court occupying the role of F2—whether state or federal—to protect that judgment by applying the preclusion law of F1.  U.S. Const. art. IV, § 1; 28 U.S.C. § 1738.  F2 must put itself in the shoes of F1 and give the *same* preclusive effect to F1's judgment as F1 would.  *See Kremer v. Chem. Const. Corp.*, 456 U.S. 461, 466 (1982).  The rule makes sense:  if F2 were permitted to honor or ignore F1's judgment as it pleased, the Full Faith and Credit Act would lose its intended function as a "nationally unifying force."  *Magnolia Petroleum Co. v. Hunt*, 320 U.S. 430, 439 (1943).

The full faith and credit obligations of F2 have equal force even when F1 purports to limit the extraterritorial effects of its preclusion rules.  It is simply not F1's prerogative to tell other courts to apply its preclusion doctrines differently than it itself would.  *See Thomas*, 448 U.S. at 270.  As the Supreme Court has emphasized:

> To vest the power of determining the extraterritorial effect of a State's own laws and judgments in the State itself risks the very kind of parochial entrenchment on the interests of other States that it was the purpose of the Full Faith and Credit Clause and other provisions of Art. IV of the Constitution to prevent.

*Thomas*, 448 U.S. at 272.**[2]**  All F1 can do "to determine the extraterritorial effect of its judgment" is prescribe "the effect of its judgments within the State."  *Id.* at 270.

In accord with the Supreme Court's guidance, federal and state courts sitting as F2 have consistently applied New Jersey's entire controversy doctrine where F1 was a New Jersey state court.  For example, in *Rycoline Products, Inc. v. C & W Unlimited*, the Third Circuit addressed whether a federal court presented with a mix of federal and state claims should apply the entire controversy doctrine when a New Jersey state court had previously issued a judgment on the same subject matter.  109 F.3d 883, 887 (3d Cir. 1997).  The Third Circuit held that it was "bound by New Jersey's Entire Controversy Doctrine, an aspect of the substantive law of New Jersey, by virtue of the Full Faith and Credit Act."  *Id.*; *see also Zahl v. Warhaftig*, 655 Fed. App'x 66, 75 & n.8 (3d Cir. 2016) (applying the entire controversy doctrine as F2); *Chrystal v. New Jersey Dep't of Law & Pub. Safety, Div. of State Police*, 535 Fed. App'x 120, 122–23 (3d Cir. 2013) (same).  Other courts have followed suit.  *See Stochastic Decisions, Inc. v. DiDomenico*, 995 F.2d 1158, 1170 (2d Cir. 1993); *Hammel v. State Farm Mut. Auto. Ins. Co.*, 114 F. Supp. 2d 478, 481 (W.D.N.C. 2000), *aff'd*, 6 Fed. App'x 169 (4th Cir. 2001).

---

**[2]** Although *Thomas*'s discussion of the extraterritorial effects of state judgments appears in a plurality opinion, at least six Justices agreed with the principle. *See id.* at 290–91 (Rehnquist, J., dissenting). The remaining three Justices conceded that the states' attempts to dictate how their preclusion rules are to be applied in other jurisdictions "rest on questionable foundations." *Id.* at 289 (White, J., concurring in the judgment).

B

The rules are slightly more complex when F1 is a federal court.  In that scenario, the Full Faith and Credit Act offers no guidance because it protects only judgments of state courts. *See* 28 U.S.C. § 1738.  The Supreme Court, however, has addressed this doctrinal gap and filled it with federal common law.  *See Taylor v. Sturgell*, 553 U.S. 880, 891 (2008); *Semtek*, 531 U.S. at 506–08.

The federal common law takes two forms depending on whether F1 exercises federal-question or diversity jurisdiction.  If the former, F2 applies federal preclusion rules.  *See Taylor*, 553 U.S. at 891.  If the latter, F2 applies "the law that would be applied by state courts in the State in which [F1 sits]."  *Semtek*, 531 U.S. at 508.  This rule promotes "nationwide uniformity" by ensuring that "the same claim-preclusive rule . . . appl[ies] whether the dismissal has been ordered by a state or a federal court."  *Id.* at 508. "[A]ny other rule would produce the sort of 'forum-shopping . . . and . . . inequitable administration of the laws' that *Erie* seeks to avoid."  *Id.* at 508–09 (quoting *Hanna v. Plumer*, 380 U.S. 460, 468 (1965)).

C

Deferring to the New Jersey Supreme Court's decision in *Mortgagelinq*—as the majority does here, Maj. Op. at 20–21—contravenes these fundamental principles of interjurisdictional preclusion.  *Mortgagelinq* addressed whether federal law or New Jersey's entire controversy doctrine governs the preclusive effect of a judgment by a Pennsylvania federal court (F1) on claims subsequently

brought in New Jersey state court (F2).  662 A.2d at 540.
Indeed, the court summarized the issue before it as follows:

> Had *Mortgagelinq I* and *Mortgagelinq II* been
> brought successively in New Jersey courts,
> there would be little doubt that application of
> the entire controversy doctrine would
> preclude the omitted claims.  The issue is
> whether the non-joinder of parties in a related
> action in the Pennsylvania federal court
> results in the same party preclusion in New
> Jersey.

*Id.*  The New Jersey Supreme Court concluded that the entire
controversy doctrine applied, but only as a bar to "successive
actions in New Jersey" and not as "a barrier elsewhere."  *Id.*
at 542.  The court therefore affirmed dismissal of the action
based on the entire controversy doctrine, but *without
prejudice*, inviting the plaintiffs to file their claims elsewhere.
*Id.* ("Maintaining a cohesive federal system . . . does not
require that the other parts of the federal system honor our
entire controversy doctrine.").

A vigorous dissent noted the perversity of this "untoward
result," preferring a straightforward application of traditional
interjurisdictional preclusion rules:

> Under established choice-of-law principles,
> the preclusive effect of a judgment is
> determined by the law of the jurisdiction that
> rendered it. . . . *Restatement (Second of
> Judgments)* § 87 (1982) ("Federal law
> determines the effects under the rules of res
> judicata of a judgment of a federal court.").

> "If [a] plaintiff would be precluded from maintaining . . . a second action in the [jurisdiction] of rendition, he will similarly be barred from maintaining such an action in other [jurisdictions]." *Restatement (Second of Judgments)* § 95 comment e (1971).  Federal law would not preclude plaintiffs from maintaining an action against these defendants in federal courts.  Consequently, I would not bar plaintiffs from pursuing the defendants in the courts of this State.

*Id.* at 543 (Pollock, J., dissenting) (all but the first alteration in original).**[3]**

Not surprisingly, *Mortgagelinq* attracted considerable controversy among federal-courts scholars almost immediately after it was issued.  *See generally* Stephen B. Burbank, *Where's The Beef? The Interjurisdictional Effects of New Jersey's Entire Controversy Doctrine*, 28 RUTGERS L.J. 87 (1996); Rochelle Cooper Dreyfuss & Linda J. Silberman, *Interjurisdictional Implications of the Entire*

---

**[3]** *Mortgagelinq* was decided pre-*Semtek*.  Neither opinion distinguished the two types of federal preclusion rules discussed above. In fact, at the time, there was considerable debate over what rule applied to protect the judgment of a federal court sitting in diversity as F1. *Compare* Stephen B. Burbank, *Interjurisdictional Preclusion, Full Faith and Credit and Federal Common Law:  A General Approach*, 71 CORNELL L. REV. 733, 805–17 (1986) (arguing in favor of the rule that *Semtek* eventually adopted), *with* Ronald E. Degnan, *Federalized Res Judicata*, 85 YALE L.J. 741, 750–55 (1976) (arguing in favor of uniform federal res judicata rules irrespective of the source of F1's jurisdiction). It is not clear which federal preclusion rule should have applied in *Mortgagelinq* because the decision does not mention the basis for jurisdiction in F1.

*Controversy Doctrine*, 28 RUTGERS L.J. 123 (1996); Perry Dane, *Sovereign Dignity and Glorious Chaos: A Comment on the Interjurisdictional Implications of the Entire Controversy Doctrine*, 28 RUTGERS L.J. 173 (1996) .  More importantly, it led directly to the majority's error in this case.

D

The majority followed *Mortgagelinq*'s two-system approach: apply one rule if F2 is a New Jersey state court; apply a different rule if F2 is a federal court.  That principle flatly contradicts *Semtek*.  Under *Semtek*, we must, as F2, apply "the law that would be applied by state courts in the State in which [F1 sits]."  531 U.S. at 508.  Because F1 here sits in New Jersey, we must apply the law "that would be applied by [New Jersey] state courts," *id.*—i.e., the entire controversy doctrine.  The answer is that easy; our analysis should have begun and ended there.

As noted at the outset, the majority responds that we cannot apply "the [entire controversy] doctrine *as if [we] were the New Jersey state court*," but rather must apply "the New Jersey state court's law as the Ninth Circuit."  Maj. Op. at 22.  This simply makes no sense.  Our task is to put ourselves in the New Jersey state court's shoes and to give the same preclusive effect to New Jersey's judgments as New Jersey would.  It is not for New Jersey to tell any other court, including our own, to apply the entire controversy doctrine differently than it itself would.  *See Thomas*, 448 U.S. at 270 ("[A] State is permitted to determine the extraterritorial effect of its judgment; but it may only do so indirectly by prescribing the effect of its judgments within the State.").

The majority also contends that the entire controversy doctrine is a mere "procedural housekeeping tool" meant only to "'preserv[e] [New Jersey's] judicial resources.'" Maj. Op. at 19–21 (quoting *Paramount Aviation Corp. v. Agusta*, 178 F.3d 132, 142 (3d Cir. 1999)); *id*. at 22–23. This makes no difference. Irrespective of New Jersey's reasons for adopting the entire controversy doctrine, the doctrine is clearly a rule of preclusion. *See, e.g.*, *Kent Motor Cars, Inc. v. Reynolds & Reynolds, Co.*, 25 A.3d 1027, 1036 (N.J. 2011) (stating that the entire controversy doctrine is a "claim preclusion rule"); *McNeil v. Legislative Apportionment Comm'n*, 828 A.2d 840, 858–59 (N.J. 2003) ("The concept that a party is required to bring all possible claims in one proceeding is embodied in the closely linked concepts of res judicata and the entire controversy doctrine.").[4] Even New Jersey Rule of Court 4:30A, which enforces the entire controversy doctrine, refers to "preclusion" as a sanction for "omitt[ing] claims."

Indeed, the New Jersey Supreme Court has stated, time and time again, that the purpose of the entire controversy

---

[4] *Accord Prevratil v. Mohr*, 678 A.2d 243, 246 (N.J. 1996) ("[The entire controversy doctrine] stems directly from the principles underlying the doctrine of res judicata or claim preclusion."); *Paulus, Sokolowski & Sartor, LLC v. Darden*, No. A-4004-13T2, 2015 WL 6456124, at *4 (N.J. Super. Ct. App. Div. Oct. 27, 2015) (characterizing the entire controversy doctrine as a "claim-preclusion device"); *VW Credit, Inc. v. Coast Auto. Grp., Ltd.*, No. A-0553-04T3, 2005 WL 3750752, at *5 (N.J. Super. Ct. App. Div. Feb. 14, 2006) (describing res judicata and the entire controversy doctrines as "rules of claim preclusion"); *Accident Fund Ins. Co. v. PML Holdings Grp., L.L.C.*, No. A-3436-08T1, 2009 WL 4724804, at *6 (N.J. Super. Ct. App. Div. Dec. 11, 2009) ("[The entire controversy doctrine] is a preclusionary device, intended to prevent fractionalized litigation by requiring the assertion of all claims arising from a single controversy in a single action.").

doctrine is threefold: "(1) the need for complete and final disposition through the avoidance of piecemeal decisions; (2) fairness to parties to the action and those with a material interest in the action; and (3) efficiency and the avoidance of waste and the reduction of delay." *Wadeer*, 110 A.3d at 27; *DiTrolio v. Antiles*, 662 A.2d 494, 502 (N.J. 1995); *Cogdell by Cogdell v. Hosp. Ctr. at Orange*, 560 A.2d 1169, 1173 (N.J. 1989). These three goals are virtually identical to those of res judicata, and the New Jersey Supreme Court has said so:

> Res judicata, like the entire controversy doctrine, serves the purpose of providing "'finality and repose; prevention of needless litigation; avoidance of duplication; reduction of unnecessary burdens of time and expenses; elimination of conflicts, confusion and uncertainty; and basic fairness[.]'"

*Wadeer*, 110 A.3d at 27–28 (citation omitted); *see also VW Credit, Inc. v. Coast Auto. Grp., Ltd.*, No. A-0553-04T3, 2005 WL 3750752, at *4 (N.J. Super. Ct. App. Div. Feb. 14, 2006) ("The entire controversy doctrine in our State advances the policies of mandatory joinder and claim preclusion associated with the more widely known doctrine of res judicata."); *In re Crispino*, 160 B.R. 749, 756 (Bankr. D.N.J. 1993) ("The purposes of the entire controversy are similar if not identical to the purposes of res judicata.").

Because the entire controversy doctrine is a rule of preclusion, we must apply it here. We do not look to whether New Jersey harbors especially warm feelings for its preclusion rules or could not care less about preclusion generally. All that matters is that New Jersey has a rule that

applies in its courts. Federal common law requires us to honor that rule, and that is the end of the matter.[5]

Finally, if there is an arch-principle overlaying interjurisdictional preclusion, it is one of fairness to all parties. When we sit in diversity, we sit in the place of state courts and do not want parties to game the system by choosing a forum based on what preclusion rules will apply. The majority ignores this principle and, in doing so, not only facilitates forum shopping but approves it in this case. *Cf. Semtek*, 531 U.S. at 508–09 (noting that having different preclusion rules in federal versus state court "would produce the sort of 'forum-shopping . . . and . . . inequitable administration of the laws' that *Erie* seeks to avoid") (citation omitted)).

\* \* \*

Interjurisdictional preclusion can be complex, but this case boils down to a few simple premises. New Jersey gets to decide its preclusion law. It does not get to dictate how federal courts apply that law. We apply New Jersey law just as New Jersey state courts would apply it. The majority did not do that.

---

[5] Even if New Jersey's reasons for adopting the entire controversy doctrine were relevant, would not preserving *federal* judicial resources be an equally valid reason to apply the same rule New Jersey courts would? That is, even granting that *New Jersey* is not concerned with our time—"this goal of preserving New Jersey's judicial resources does not benefit from a non-New Jersey court (sitting as F2) closing its courthouse doors," Maj. Op. at 21—*we* still care about our time as much as New Jersey courts care about theirs. The majority's contention that applying New Jersey's doctrine here would be "incompatible with federal interests," Maj. Op. at 23, is both unsupported and inapplicable.

I respectfully dissent.